2004 WY 135

**Chet Alan CHRISTENSEN,**
**Appellant (Defendant),**

v.

**CARBON COUNTY, Wyoming, a County of the State of Wyoming, by and through its Board of County Commissioners, Appellee (Plaintiff).**

No. 04–44.

Supreme Court of Wyoming.

Nov. 9, 2004.

Rehearing Denied Nov. 30, 2004.

**412**

Representing Appellant: Daniel B. Frank of Frank Law Office, P.C., Cheyenne, Wyoming.

Representing Appellee: Thomas A. Thompson and Brandon W. Snyder of Mac-Pherson, Kelly and Thompson, LLC, Rawlins, Wyoming.

Before HILL, C.J., and GOLDEN and VOIGT, JJ., and DONNELL and BROOKS, DJJ.

BROOKS, District Judge.

[¶ 1] This case was brought by the appellee, Carbon County, Wyoming (Carbon County), against the appellant, Chet Alan Christensen (Christensen), alleging that Christensen was in violation of certain Carbon County zoning resolutions. Carbon County sought injunctive relief as well as the imposition of civil fines against Christensen for keeping a junkyard and an illegal residence on his property. After some limited discovery, the district court granted Carbon County's motion for summary judgment and enjoined Christensen from further zoning violations and assessed monetary penalties.

### ISSUE

[¶ 2] The issue now before this Court is whether there were genuine issues of material fact as to the existence of a junkyard and illegal residence that precluded summary judgment. We find that issues of fact do exist and reverse and remand.

### FACTS

[¶ 3] Christensen purchased a sixteen-acre tract of land in Carbon County in April of 2000. The land had been zoned as ranching, agricultural, and mining under the Carbon County Zoning Resolution of 1972. The subject property is separate and apart from Christensen's residence in Saratoga.

[¶ 4] In 2001 and 2002, Carbon County notified Christensen that he was in violation of the zoning resolution in two particulars. First, it was alleged that Christensen had a junkyard on the property. Second, Carbon County contended that Christensen had a residence on the property that was unrelated to ranching or agriculture and was therefore prohibited by the zoning requirements.

[¶ 5] The factual record is comprised primarily of Christensen's deposition and the cease and desist letters to Christensen from Carbon County. The deposition of Christensen indicates that he did have items on the property such as old water heaters and scrap iron that could properly be described as junk. Christensen's sworn testimony also discloses that he had a shed on the property that had water and electricity, but no septic or toilet facilities. Christensen's father stayed in the shed on occasion for up to two weeks at a time in the summer.

[¶ 6] On March 7, 2002, Carbon County sent a letter to Christensen requiring him to remove the junk from the property and remove the residential building (shed) from the property or face legal action. Christensen's response was unsatisfactory to Carbon County, and on May 31, 2002, Carbon County filed suit alleging zoning violations pertaining to the junkyard and illegal residence. Carbon County, thereafter, filed a motion for summary judgment attaching Christensen's deposition. Christensen, who was then appearing *pro se*, filed a two-page brief without any supporting affidavits.

[¶ 7] The district court granted Carbon County's motion, finding that the shed was an impermissible residence and that part of Christensen's property was a junkyard in violation of the Carbon County zoning resolution. The district court, therefore, issued an injunction prohibiting the illegal residential use and requiring immediate removal of the shed and the accumulation of junk. At a separate hearing, the district court imposed civil penalties totaling $39,000.00, but suspended $29,000.00 if Christensen immediately complied with the district court's injunction.

### STANDARD OF REVIEW

[¶ 8] Summary judgment is appropriate when no genuine issue exists as to any material fact and the moving party is entitled to judgment as a matter of law.... A genuine issue of material fact exists when a disputed fact, if it were proven, would establish or refute an essential element of a cause of action or a defense that the parties have asserted.... The movant bears the initial burden of establishing a prima facie case for summary judgment. If the movant carries his burden, the party who is opposing the motion for summary judgment must pres-

ent specific facts to demonstrate that a genuine issue of material fact exists.... This court evaluates the propriety of a summary judgment by employing the same standards and by using the same materials as the district court employed and used. We examine the record in the light most favorable to the party who opposed the motion for summary judgment, and we give that party all the favorable inferences that may fairly be drawn from the record. We accord no deference to the district court's decisions on issues of law.

*Metz Beverage Co. v. Wyoming Beverages, Inc.*, 2002 WY 21, ¶ 9, 39 P.3d 1051, 1055 (Wyo.2002).

## DISCUSSION

[¶ 9] First, we must determine which Carbon County zoning resolution applies to this case. Carbon County's initial complaint alleged a violation of the Zoning Resolution of 2000. That resolution was ruled void by the district court on or about May 28, 2003, in an unrelated matter. The parties agree that the Carbon County Zoning Resolution of 1972 became effective once the Zoning Resolution of 2000 was invalidated.

[¶ 10] During the pendency of this case, Carbon County enacted the Zoning Resolution of 2003. Carbon County concedes that any restrictions contained in the 2003 Zoning Resolution that were more stringent than the 1972 Zoning Resolution would not be applicable to Christensen. Therefore, as it pertains to this case, this Court believes, and the parties generally agree, that the 1972 Zoning Resolution is the applicable resolution.

### Existence of Junkyard

[¶ 11] We next turn to whether Christensen was operating a junkyard on his property within the meaning of the 1972 Zoning Resolution. The 1972 Zoning Resolution defines junkyard with specificity. The resolution mandates that, among other things, in order to qualify as a "junkyard," the property must be used "primarily for the collecting, storage, and *sale* of waste paper, rags, scrap metal, or other scrap or discarded material...." Carbon County Zoning Resolution of 1972, § 600.5 (emphasis added).

[¶ 12] The record, at best, is silent as to whether there was any sale of junk. Specifically, Christensen stated in his deposition as follows:

Q. What's your intentions as to that iron you salvaged?

A. Some if it I'm using to build the shed. I used—it's all framed up with pipe that I got out of that. And what's left—I mean, some of it I'm going to use on that yet, and what's left I'm going to put in the garage and use it for different welding projects and jobs that I get and do.

Q. So no intention to get rid of it. You're going to salvage it and keep it—

A. Right.

Q. —for your own use.

A. Yes.

[¶ 13] The zoning resolution clearly requires that junk be sold from the property. From the foregoing, there is a strong inference that Christensen had no intention of selling the "junk." Based on the 1972 Zoning Resolution, Christensen's property would therefore not qualify as a junkyard. In any event, we believe there is at least a question of fact as to whether the property in question was a junkyard as that term is defined in the 1972 Zoning Resolution.

### The Illegal Residence

[¶ 14] We also believe that there is a question of fact as to whether the shed was an illegal residence. The 1972 Zoning Resolution states that "[p]rimary residential uses not related to ranching and agriculture will not be permitted within this [RAM (ranching, agricultural, and mining)] district." Carbon County Zoning Resolution of 1972, § 300. The resolution goes on to define primary residence as "[a] place used for residential purposes." *Id.* at § 600. There apparently is no definition of residential purposes contained in the 1972 Zoning Resolution.

[¶ 15] It is clear from the deposition of Christensen that the shed was used sparingly as a place to sleep. While it had some utilities, it had no toilet or septic facilities. We believe that reasonable minds could disagree as to whether a shed without all nor-

mal utilities that was occasionally used for sleeping was truly "[a] place used for residential purposes." *Id.*

[¶ 16] Second, the word "primary," as contained in the resolution, must have some meaning. In interpreting a statute, we will assign words their ordinary and obvious meaning according to their arrangement and connection. *Fontaine v. Board of County Com'rs of Park County,* 4 P.3d 890, 895 (Wyo.2000) (*quoting Flores v. Flores,* 979 P.2d 944, 946 (Wyo.1999)). Black's Law Dictionary defines "primary" as "[f]irst; principal; chief; leading." Black's Law Dictionary 1190 (6th ed.1990). Therefore, if the shed could be deemed a residence, there appears to be a question of fact as to whether it was "primarily" residential.

[¶ 17] Finally, the resolution permits a residence that is related to ranching and agriculture. Agricultural uses were defined in the resolution as "[l]and including necessary buildings and structure, which shall be used for agriculture including, but not limited to ... grazing ... pasturage ... and animal ... husbandry...." Carbon County Zoning Resolution of 1972, § 600. In his deposition, Christensen stated that at various times, on the subject property, he cared for and ultimately sold a substantial number of calves. Thus, if the shed could be deemed a residence, there is a question of fact as to whether it was related to agriculture. Such a use would be permissible under the resolution. We believe, based on the foregoing, that there are multiple questions of fact in the record about the status of the shed that need to be resolved.

### The Fine

[¶ 18] Christensen contends that the fine that was levied by the district court was excessive and unreasonable. This issue has been rendered moot by our finding that there are questions of fact as to whether or not Christensen's land constituted a junkyard and contained an illegal residence. The fine must be set aside unless and until the factual issues pertaining to the status of the property are resolved against Christensen.

### CONCLUSION

[¶ 19] We hold that there were genuine issues of material fact relating to whether or not Christensen maintained a junkyard and/or an illegal residence on his property, and that, therefore, the summary judgment granted by the district court is vacated, and this matter is reversed and remanded for further proceedings.