2007 WY 175

Mary A. BERRY, and Merry Berry, Inc., A Wyoming Corporation, d/b/a Fountain of Youth RV Park, Appellants (Defendants),

v.

Pamela TESSMAN, Appellee (Plaintiff).

No. S–07–0027.

Supreme Court of Wyoming.

Nov. 2, 2007.

Representing Appellants: Michael C. Steel and Jacob L. Brooks of Lonabaugh and Riggs, LLP, Sheridan, Wyoming. Argument by Mr. Steel.

Representing Appellee: David B. Hooper of Hooper Law Offices, Riverton, Wyoming.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, and BURKE, JJ.

VOIGT, Chief Justice.

[¶ 1]   Appellants, Mary A. Berry and Merry Berry, Inc., contest the district court's determination that they are liable for damages sustained when Appellee, Pamela Tessman, a guest in their RV park, injured herself by stepping into a marmot hole on the property.   Appellants also contest the amount of damages awarded by the district court.   We reverse.

## ISSUES

[¶ 2]   Ms. Tessman presents several issues for our review.   The following issue is dispositive:

> Did the district court err in determining that a landowner had a legal duty to protect a visitor to her property from marmot holes on the premises?

## FACTS

[¶ 3]   On July 4, 2003, Ms. Tessman was staying at an RV park owned by Ms. Berry and leased to Merry Berry, Inc. At check-in, Ms. Tessman asked Ms. Berry to direct her to a place where she could take her son fishing.   Ms. Berry directed Ms. Tessman to

the river just off the property. Ms. Tessman and her son walked across the property to the river. In doing so they cut behind the bathhouse of the park, across several fields, over a "mashed down fence" and over a set of railroad tracks. On the way back, Ms. Tessman testified, she saw several boys playing by a marmot hole in the field behind the bathhouse. Ms. Tessman testified that she saw a number of adults and children using the "grassy area" behind the bathhouse to get to and from the river during the day.[1]

[¶4] The gated pool area of the RV park normally closed to visitors at 9:30 p.m. However, on the 4th of July, Ms. Berry kept the pool area open so that visitors could watch the municipal fireworks display from the pool. Ms. Tessman was in the pool area observing the fireworks when she noticed that her son was up by the railroad tracks behind the property with a group of children who appeared to be setting off fireworks. Concerned for her son's safety, Ms. Tessman left the lit pool area and went out into the grassy area behind the bathhouse to call her son back. She stepped in the marmot hole she had observed earlier that day, twisted her ankle, and fell to the ground. Ms. Tessman's relatives carried her back to her motor home and performed basic first aid on her injuries. Ms. Tessman saw a doctor the next morning at Ms. Berry's insistence and has had continuing medical care since then.

[¶5] Ms. Tessman sued to recover for injuries that she asserts stem from the fall she suffered when she stepped in the marmot hole on Ms. Berry's property. The district court found in Ms. Tessman's favor and awarded $259,205.00, which was reduced by 25% for contributory negligence. This appeal followed.

## DISCUSSION

[¶6] The elements a plaintiff must establish to maintain a negligence action are: (1) The defendant owed the plaintiff a duty to conform to a specified standard of care, (2) the defendant breached the duty of care, (3) the defendant's breach of the duty of care proximately

caused injury to the plaintiff, and (4) the injury sustained by the plaintiff is compensable by money damages.

*Valance v. VI–Doug, Inc.,* 2002 WY 113, ¶8, 50 P.3d 697, 701 (Wyo.2002). We decline to address the issues related to breach and damages, as the issue of duty is dispositive.

[¶7] The determination of the existence of a duty is a question of law, which we review *de novo. Id.* at ¶8, 50 P.3d at 701. It may be necessary to consider some underlying facts in order properly to determine the existence of a duty. *Id.* We defer to a trial court's findings of facts unless they are clearly erroneous. *Snelling v. Roman,* 2007 WY 49, ¶7, 154 P.3d 341, 345 (Wyo.2007).

[¶8] Some factors utilized in determining the existence of a duty are:

(1) the foreseeability of harm to the plaintiff, (2) the closeness of the connection between the defendant's conduct and the injury suffered, (3) the degree of certainty that the plaintiff suffered injury, (4) the moral blame attached to the defendant's conduct, (5) the policy of preventing future harm, (6) the extent of the burden upon the defendant, (7) the consequences to the community and the court system, and (8) the availability, cost and prevalence of insurance for the risk involved.

*Mostert v. CBL & Assocs.,* 741 P.2d 1090, 1094 (Wyo.1987).

[¶9] A landowner in Wyoming owes a general duty to "act as a reasonable man in maintaining his property in a reasonably safe condition in view of all the circumstances, including the likelihood of injury to another, the seriousness of the injury, and the burden of avoiding the risk." *Clarke v. Beckwith,* 858 P.2d 293, 296 (Wyo.1993). In accordance with the above-mentioned principles of duty (*see supra* ¶8), Wyoming long ago recognized that landowners do not have a duty to protect from known and obvious dangers. *McKee v. Pacific Power & Light Co.,* 417 P.2d 426 (Wyo.1966). "It seems to be well settled that there is no liability for injuries from dangers that are obvious, reasonably apparent, or as well known to the person

---

1. This was not lawn grass, but naturally occur-    ring vegetation.

injured as they are to the owner of the facilities in question." *Id.* at 427.

[¶ 10]   In *O'Donnell v. City of Casper,* 696 P.2d 1278 (Wyo.1985), we rejected the application of this rule to man-made hazards. In *O'Donnell,* we found that the known and obvious danger rule did not apply because the gravel on a municipal road, which caused a motorcyclist's injuries, had been laid by the city. *Id.* at 1283. We determined that the known and obvious danger rule had survived the statutory implementation of comparative negligence but found that the rule was limited to cases where the danger was naturally occurring. *Id.* at 1282. "The thrust of our known and obvious danger rule decisions has been that the danger presented by the accumulations of snow and ice does not generally create liability for a possessor of property because of their natural character." *Id.* at 1283. We restated this rule in *Valance v. VI–Doug, Inc.,* 2002 WY 113, ¶ 12, 50 P.3d at 703, saying "[a] proprietor does not owe a duty of care to invitees to prevent the natural consequences of wind on his premises where he has not created or aggravated the naturally existing condition."

[¶ 11]   We have repeatedly affirmed that "[a]n owner of property still has no duty to his invitees to correct a known and obvious danger resulting from natural causes." *Radosevich v. Board of County Comm'rs of County of Sweetwater,* 776 P.2d 747, 749 n. 1 (Wyo.1989) (quoting *Jones v. Chevron U.S.A., Inc.,* 718 P.2d 890, 897 (Wyo.1986)). In *Eiselein v. K–Mart, Inc.,* 868 P.2d 893, 895 (Wyo. 1994), we discussed our decision in *O'Donnell* and reiterated that "[w]e did not conclude, however, that the comparative negligence statute completely abrogated the rule, rather, we indicated it modified the known and obvious danger rule; restricting its application to known and obvious dangers resulting from natural causes." We further stated in *Eiselein v. K–Mart* that "no justification exists for imposing on a property owner a duty to protect invitees from hazards which are naturally occurring and identical to those encountered off the premises." *Id.* at 898.

[¶ 12]   While it is true that a landowner has no duty to protect others from "hazards which are naturally occurring and identical to those encountered off the premises", it is possible to remove a hazard from the ambit of this rule by aggravating the hazard, thereby significantly altering it from a naturally occurring condition that would be encountered off the premises. *Selby v. Conquistador Apts., Ltd.,* 990 P.2d 491, 494 (Wyo.1999). A plaintiff may show that an otherwise naturally occurring condition does not fall within this rule by showing "(1) that the defendant created or aggravated the hazard; (2) that the defendant knew or should have known of the hazard; and (3) that the hazardous condition was substantially more dangerous than it would have been in its natural state." *Id.*

[¶ 13]   Even a naturally occurring, known and obvious hazard that the landowner has not aggravated could result in liability if that landowner were to create an expectation of heightened safety for people on the premises. We have adopted the Restatement view [2] of voluntary undertakings:

One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if (a) his failure to exercise such care increases the risk of such harm, or (b) the harm is suffered because of the other's reliance upon the undertaking.

*Ellsworth Bros., Inc. v. Crook,* 406 P.2d 520, 524 (Wyo.1965) (quoting RESTATEMENT (SECOND) OF TORTS § 324(A) (1965) (renumbered § 323 in later editions)). It is clear from the facts of *Ellsworth* that the court excised the portions of § 323 that were irrelevant to that particular case. The omission does not appear to have been an explicit rejection of those portions of RESTATEMENT § 323, which we have included here.

2.   The adopted language reads:
   One who undertakes, gratuitously * * * to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if (a) his failure to exercise reasonable care increases the risk of such harm, * * *.

RESTATEMENT (SECOND) OF TORTS § 323 (1965). For example, a landowner could not reasonably allow a soccer field open to public use to become riddled with animal burrows, and still avoid responsibility. The maintenance of land for such purposes would create an expectation of safety in visitors that would presumably cause them to act as they otherwise would not, that is, to run full tilt across an open field, as opposed to walking carefully. The landowner, by undertaking to maintain his property for such use, would incur the duty to act reasonably with respect to that undertaking, and to maintain his property at a reasonable level of safety commensurate with the specific purposes for which it was made available.

[¶ 14] We see no reason the known and obvious danger rule should not apply to the ubiquitous hazard posed by the holes of burrowing animals. Ms. Tessman has not shown that her circumstances warrant a finding that the marmot hole she stepped in was anything other than a naturally occurring, known and obvious danger, from which Ms. Berry had no duty to protect her. She has also not shown that Ms. Berry owed her any other duty that would support a finding of negligence here. The marmot hole was not a hazard created by Ms. Berry. The marmots were not domestic animals or pets but wild animals present in the surrounding area, as well as on the property itself. There is no evidence that Ms. Berry or her staff aggravated the danger posed by the marmot hole. To the contrary, the trial court found that Ms. Berry acted in a reasonable manner in attempting to minimize the danger from such holes on her property by filling them regularly and by having the animals trapped whenever they became a nuisance.

## CONCLUSION

[¶ 15] A landowner does not have a duty to protect a guest on her property from a naturally occurring, known and obvious hazard she has not aggravated if she has not, through her own undertaking, created an expectation in her guests that they will be protected from such a hazard. Ms. Berry and Merry Berry, Inc. did not create or aggravate the marmot hole that caused Ms.

Tessman's injuries, nor did Ms. Berry undertake any act that could have caused Ms. Tessman to rely reasonably on a heightened expectation of safety or special protection from marmot holes on her property. We reverse and remand for entry of a judgment in favor of Appellants.