2010 WY 109

William P. RICE, Appellant (Plaintiff),

v.

COLLINS COMMUNICATION, INC., a Wyoming Corporation, Communication Technologies, Inc., a Wyoming Corporation, Campbell County Board of County Commissioners, Campbell County Sheriff, William Pownall, Gillette/Wright/Campbell County Fire Protection Joint Powers Board, and Campbell County Emergency Management Coordinator, David King, Appellees (Defendants).

No. S-09-0007.

Supreme Court of Wyoming.

Aug. 4, 2010.

Rehearing Denied Sept. 7, 2010.

James C. Worthen of Murane & Bostwick, LLC, Casper, WY for Communication Technologies, Inc.; Judith Studer of Schwartz, Bon, Walker & Studer, LLC, Casper, WY for Campbell County Board of County Commissioners, Campbell County Sheriff, and Campbell County Emergency Management Coordinator; and Tom C. Toner of Yonkee & Toner, LLP, Sheridan, WY for Gillette Wright/Campbell County Fire Protection Joint Powers Board. Argument by Messrs. Schwartz, Shumate, Toner, and Ms. Studer.

Before KITE, C.J., and GOLDEN, HILL, VOIGT *, and BURKE, JJ.

HILL, Justice.

[¶ 1] William P. Rice's commercial building caught fire in Campbell County, Wyoming. Because of a failure in the communications/paging system used by the county, almost a half hour passed before there was any formal response to the fire. Rice's building and its contents were almost totally destroyed. Rice filed suit against several county entities as well as two communications companies alleging negligence, whereupon the district court dismissed his complaint in its entirety. We will affirm.

## ISSUES

[¶ 2] Mr. Rice states his issues as follows:

— Was it error for the district court to find as a matter of law that Defendants Collins and ComTech owed no duty of care to [Rice] in operating and maintaining an emergency communications system for Campbell County, when the failure of that system delayed the fire department's response to a fire, leading to the destruction of [Rice's] building and property?

— Was it error for the district court to grant summary judgment to the County Defendants on the basis of governmental immunity, despite W.S. § 1–39–108(a) which waives immunity for negligent operation of public utilities and services?

Representing Appellant: Jeffrey A. Tennyson of Jeffrey A. Tennyson, P.C.; and Heather Noble, Jackson, WY. Argument by Mr. Tennyson.

Representing Appellees: Stuart R. Day and Ryan J. Schwartz of Williams, Porter, Day & Neville, P.C., Casper, WY for Collins Communication, Inc.; Roger E. Shumate and

* Chief Justice at time of oral argument.

— Was it error for the district court to grant summary judgment to Defendant Sheriff Pownall on the basis of governmental immunity, despite W.S. § 1–39–112 which waives immunity [for] tortious conduct of peace officers while acting within the scope of their duties?

— Was it error for the district court to grant summary judgment to the County Defendants on the basis of governmental immunity despite W.S. § 1–39–106 which waives sovereign immunity for negligent operation or maintenance of any building?

— Did the district court err in finding that [Rice] could not establish that his damages were proximately caused by Defendant's negligence?

## FACTS

[¶ 3] On April 8, 2006, a fire was reported at 402 East 2nd Street in Gillette, Wyoming. The county sheriff's office dispatch center received the call reporting the fire at 12:25 a.m. The first police officer responded to the scene at 12:28 a.m., and the ambulance arrived at 12:30 a.m. Fire engine 11 arrived at 12:52 a.m., twenty-seven minutes after the fire was first reported.

[¶ 4] The fire consumed much of the commercial building, out of which Rice ran several businesses.[1] Rice also leased business space to several other tenants. Unfortunately for all of the businesses and owners, the fire resulted in a total loss of the building.[2]

[¶ 5] The night of the fire, a malfunction occurred in the emergency paging system used by the county. The system works as follows: When a page is initiated by the sheriff's department, it originates in the dispatch center and travels by wire to a microwave transceiver. The transceiver then transmits the page to an antenna located in the back of the sheriff's office. The antenna then sends a signal, via microwaves, to one of

four remote towers—the Hitt tower, the North tower, the South tower and the Wright tower. Those towers then re-transmit the signal to portable radios carried by volunteer firefighters. Although the fire department is staffed by full-time career firefighters from 6 a.m. to 6 p.m., volunteer firefighters are "on call" from 6 p.m. to 6 a.m. Those volunteer firefighters are "paged" to notify them of a fire. Normally, they contact dispatch when they are en route to the fire station. However, the night of the fire in this case, the dispatcher did not hear any responses, and so she sent the page again. Once more, she heard no responses, and then activated the City Watch AVS 100 Phone Notification System, which called the firefighters by telephone to notify them of the fire.

[¶ 6] Because of the delay in response, Rice filed suit, alleging negligence against several defendants. First, he named the Campbell County Board of County Commissioners, Campbell County Sheriff William Pownall, and Campbell County Emergency Management Coordinator David King (the "County Defendants"), alleging that they were negligent based upon the decisions they made related to the emergency communication system in place at the time of the fire. Rice also named Collins Communication, Inc., a Wyoming Corporation that sells electronic and communications products and provides service for those products. Collins installed a Motorola Quanter repeater system and related components at the Hitt Hill site on February 22, 2006, and Rice alleged that they were negligent based upon the work they performed at the Hitt Hill site. Finally, Rice named Communication Technologies, Inc. ("ComTech"), which has a contract for maintenance and service of specific communication equipment which is part of the Campbell County emergency communication system—Rice alleged that they were negligent based on that contract.[3]

---

1. The property consisted of a large "L-shaped" metal and stucco structure. One section housed a laundromat called "The Little Washboy Laundromat."

2. The fire investigator concluded that the fire started in one of the clothes dryers in the laundromat.

3. Although Rice named multiple defendants, no determination as to the cause of the page failure has been made.

[¶ 7] All named defendants filed motions for summary judgment in response to Rice's amended complaint. In its decision letter, the district court divided the motions into "two broad categories." The first issue presented by Collins and ComTech involved whether a duty to Rice existed. The second issue presented by the County Defendants and the Defendant Fire Board involved the question of immunity from liability under the Wyoming Governmental Claims Act (WGCA), Wyo. Stat. Ann. § 1–39–101, et. seq. (LexisNexis 2009). The court concluded that no duty existed on behalf of Collins or ComTech, and because the County Defendants and the Fire Board did not meet any of the exceptions to the WGCA, their governmental immunity was not waived. Thus, all motions for summary judgment were granted, and this appeal followed.

### STANDARD OF REVIEW

[¶ 8] Our oft repeated standard of review for summary judgment motions is as follows:

We evaluate the propriety of a summary judgment by employing the same standards and using the same materials as the district court. *Cook v. Shoshone First Bank*, 2006 WY 13, ¶ 11, 126 P.3d 886, 889 (Wyo.2006). Thus, our review is plenary. *Birt v. Wells Fargo Home Mortg., Inc.*, 2003 WY 102, ¶ 7, 75 P.3d 640, 647 (Wyo. 2003).

Wyo. R. Civ. P. 56 governs summary judgments. A summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. W.R.C.P. 56(c). When reviewing a summary judgment, we consider the record in the perspective most favorable to the party opposing the motion and give that party the benefit of all favorable inferences which may be fairly drawn from the record. We review questions of law *de novo* without giving any deference to the district court's determinations.

*Cathcart v. State Farm Mut. Auto. Ins. Co.*, 2005 WY 154, ¶ 11, 123 P.3d 579, 586 (Wyo.2005), quoting *Baker v. Ayres &*

*Baker Pole & Post, Inc.*, 2005 WY 97, ¶ 14, 117 P.3d 1234, 1239 (Wyo.2005).

"A genuine issue of material fact exists when a disputed fact, if it were proven, would establish or refute an essential element of a cause of action or a defense that the parties have asserted." *Christensen v. Carbon County*, 2004 WY 135, ¶ 8, 100 P.3d 411, 413 (Wyo.2004) (quoting *Metz Beverage Co. v. Wyoming Beverages, Inc.*, 2002 WY 21, ¶ 9, 39 P.3d 1051, 1055 (Wyo. 2002)). The party requesting a summary judgment bears the initial burden of establishing a prima facie case for summary judgment. If he carries his burden, "the party who is opposing the motion for summary judgment must present specific facts to demonstrate that a genuine issue of material fact exists." *Id.* We have explained the duties of the party opposing a motion for summary judgment as follows:

"After a movant has adequately supported the motion for summary judgment, the opposing party must come forward with competent evidence admissible at trial showing there are genuine issues of material fact. The opposing party must affirmatively set forth material, specific facts in opposition to a motion for summary judgment, and cannot rely only upon allegations and pleadings . . ., and conclusory statements or mere opinions are insufficient to satisfy the opposing party's burden."

The evidence opposing a prima facie case on a motion for summary judgment "must be competent and admissible, lest the rule permitting summary judgments be entirely eviscerated by plaintiffs proceeding to trial on the basis of mere conjecture or wishful speculation." Speculation, conjecture, the suggestion of a possibility, guesses, or even probability, are insufficient to establish an issue of material fact. *Cook*, ¶ 12, 126 P.3d at 890, quoting *Jones v. Schabron*, 2005 WY 65, ¶¶ 9–11, 113 P.3d 34, 37 (Wyo.2005). *Hatton v. Energy Elec. Co.*, 2006 WY 151, ¶¶ 8–9, 148 P.3d 8, 12 13 (Wyo.2006).

*Loredo v. Solvay Am., Inc.*, 2009 WY 93, ¶ 10, 212 P.3d 614, 618–619 (Wyo.2009).

## DISCUSSION

### Collins/ComTech Duty of Care

■ [¶ 9] Rice first argues that it was error for the district court to find as a matter of law that Appellees Collins and ComTech owed no duty of care to Rice in operating and maintaining an emergency communications system for Campbell County, when the failure of that system delayed the fire department's response to the fire that led to the destruction of Rice's building and property.

■ [¶ 10] In order to maintain a claim of negligence, a plaintiff must prove: 1) The defendant owed the plaintiff a duty of reasonable care; 2) the defendant breached the duty; and 3) the defendant's breach was the proximate cause of injury or loss to the plaintiff. *Andersen v. Two Dot Ranch, Inc.*, 2002 WY 105, ¶ 11, 49 P.3d 1011, 1014 (Wyo. 2002). The existence and scope of a duty are questions of law for the court. Absent a duty, there is no actionable claim of negligence. Additionally, absent evidence that the defendant breached the duty by failing to exercise reasonable care, a claim of negligence is not sustainable. *Id.* A duty of care "may arise by contract, statute, common law, or when the relationship of the parties is such that the law imposes an obligation on the defendant to act reasonably for the protection of the plaintiff." *Hamilton v. Natrona County Educ. Ass'n*, 901 P.2d 381, 384 (Wyo.1995).

[¶ 11] We begin with Rice's claim that Collins and ComTech owed him a duty of care based on the Restatement (Second) of Torts. The Restatement contains the following provision:

One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if

(a) his failure to exercise reasonable care increases the risk of such harm, or

(b) he has undertaken to perform a duty owed by the other to the third person, or

(c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

Restatement (Second) of Torts, § 324A (1965). We have adopted this Restatement view of voluntary undertakings in the "Good Samaritan" context. *See Berry v. Tessman*, 2007 WY 175, ¶ 13, 170 P.3d 1243, 1246 (Wyo. 2007) (visitor Tessman tripped and fell into a naturally occurring marmot hole at a campground; because campground owner Berry had not undertaken to fix or free the area of marmot holes, there was no duty); *Andersen*, ¶ 11, 49 P.3d 1011 at 1014.

[¶ 12] Although this Court has adopted the Restatement as it applies to Good Samaritans, to do so in this case would be wholly outside of that context. Here, under Rice's argument, a private corporation doing business with a government entity would owe a duty to a private citizen. The Restatement does not contemplate that sort of expansion.

[F]or purposes of liability under ... [section] 324A, it must be demonstrated that the services rendered either increased the risk of harm to the third party or consisted of the performance of a duty owed by the other party to the involved third party, or that the harm resulted from the third party's reliance upon the service renderer's performance.

*May Dep't Stores Co. v. University Hills, Inc.*, 789 P.2d 434, 441 (Colo.Ct.App.1989). "The Restatement of Torts (Second) 324(a) only refers to a duty to avoid *physical* harm to a third person or his things; it does not include language expanding the duty to infliction of intangible harm to property rights." *Braick v. Faxton–St. Luke's Healthcare*, 2004 N.Y. Slip Op. 51595U, 2, 2004 WL 2903625 (N.Y.Sup.Ct.2004) (emphasis added).

■ [¶ 13] In this case, both Collins and ComTech were merely supplying services at the request of the county. Thus, the Restatement does not impose liability. However, that conclusion does not end our inquiry as to the question of duty. Rice also contends that the "eight-factor" test, when applied, determines that a duty existed. The eight factors utilized to determine the existence of a duty are:

(1) The foreseeability of harm to the plaintiff, (2) the closeness of the connection between the defendant's conduct and the injury suffered, (3) the degree of certainty that the plaintiff suffered injury, (4) the moral blame attached to the defendant's conduct, (5) the policy of preventing future harm, (6) the extent of the burden upon the defendant, (7) the consequence to the community and the court system, and (8) the availability, cost and prevalence of insurance for the risk involved.

*Berry,* ¶ 8, 170 P.3d at 1245 (citing *Mostert v. CBL & Assoc.,* 741 P.2d 1090, 1094 (Wyo. 1987)). The court may also consider the "magnitude of the risk involved in defendant's conduct, the burden of requiring defendant to guard against that risk and the consequences of placing that burden upon the defendant." *Sponsel v. Park County,* 2006 WY 6, ¶ 18, 126 P.3d 105, 110 (Wyo. 2006).

[¶ 14] In its decision letter, the district court outlined the eight factors and concluded as follows in relation to them:

1. While the failure of such communication equipment causing a delay in the response of emergency services could have been foreseeable, it cannot be established that the delay contributed to [Rice's] harm.

2. The degree of closeness between the conduct of Defendants Collins and ComTech and the injury suffered is small. Three of the four repeaters in the County emergency communications systems were fully functional, and it cannot be conclusively established that the delay in response time contributed to [Rice's] harm.

3. While it is clear [Rice] suffered harm, it cannot be established that the Defendants' actions caused that harm.

4. Moral blame cannot be attached to the Defendants for failure in equipment used in the normal course of business and properly maintained.

5. While preventing future harm is always a concern for the court, imposing a duty of this magnitude upon those who provide service and equipment to emergency communication systems would ultimately hinder the ability of county governments to acquire such services.

6. Holding the Defendants responsible for the failure of communication equipment in this case would impose an unreasonably heavy burden on the Defendant.

7. The consequences to the community and court would be high as costs for the maintenance of emergency communication systems would increase and the likelihood of lawsuits would also increase.

8. Fire insurance is easily acquired and relatively inexpensive compared to the benefit. [Rice] could have been compensated for his damages through those means.

We are in agreement with the district court. While we do not see a need to expound on the district court's sound reasoning as to every factor, we would like to address factors one and two in greater detail. We believe factors one and two, the foreseeability of harm to the plaintiff and the closeness of the connection between the defendant's conduct and the injury suffered, are the "crux" of the issue in front of us. Our caselaw is instructive on these two factors. We have stated that summary judgment is proper when "the causal connection between defendant's acts and plaintiff's damage is almost entirely subject to conjecture and speculation." *De Wald v. State,* 719 P.2d 643, 651 (Wyo.1986).[4] With respect to Collins' and ComTech's conduct in the instant case, it cannot be stated that the fire on Rice's property, and the resulting damage, was either's fault. After reviewing the record on appeal, we conclude

---

4. In *De Wald,* this Court cited to *Hoyle v. Southern Bell Tel. & Tel. Co.,* 474 F.Supp. 1350 (W.D.N.C.1979). In *Hoyle* the plaintiff claimed that the defendant negligently failed to repair a customer's telephone and, as a result, the customer was delayed in getting to the hospital and died. The court granted defendant's motion for summary judgment finding that the case hinged on many facts which could never be determined. The court based its judgment primarily upon the fact that it was impossible to show that, absent the delay, the deceased would have lived.

that neither Collins nor ComTech owed Rice a duty of care.

### Governmental Immunity—Scope of Duties

■■ [¶ 15] Wyo. Stat. Ann. § 1–39–104(a) (LexisNexis 2009) provides:

A governmental entity and its public employees while acting within the scope of duties are granted immunity from liability for any tort except as provided by W.S. 1–39–105 through 1–39–112, and limited by W.S. 1–39–121.

The WGCA is a "closed end tort claims act" such that any claim is barred unless it falls within a statutory exception. *Sponsel,* 126 P.3d at 105.

[¶ 16] Rice contends that "several provisions" of the WGCA apply and effectively strip the County Defendants of their governmental immunity, and that the district court was in error when it granted summary judgment to the County Defendants, finding that immunity had not been waived.

■■ [¶ 17] First, Rice points to Wyo. Stat. Ann. § 1–39–108(a) (LexisNexis 2009), which provides that a governmental entity is liable for damages caused by the negligence of public employees while acting within the scope of their duties "in the operation of public utilities and services including gas, electricity, water, solid or liquid waste collection or disposal, heating and ground transportation." Rice argues that the emergency communication system at issue in this case qualifies as a public utility and service within the scope of this statute, and thus, the County Defendants are liable. The County Defendants argue that a fire page is not the operation of a public utility for purposes of the waiver of immunity under § 1–39–108(a).

[¶ 18] Both parties rely upon *City of Cheyenne v. Huitt,* 844 P.2d 1102 (Wyo.1993), to support their arguments. In that case, this Court held that firefighting is not a public utility or service for purposes of § 1–39–108(a). We stated in *Huitt:*

If we would accept respondent's contention that firefighting is included among the governmental operations for which immunity is waived by Wyo. Stat. § 1–39–108, although not so specified therein, the same

could also be true for all other governmental operations. The legislature, then, would have done a useless thing in specifying certain operations *in the statute* for which immunity is waived. Further, should we accept such contention, the legislature would also have done a useless thing in providing exceptions to immunity *in other statutes* contained in the Act, e.g., uses of motor vehicles, aircraft, and watercraft in Wyo. Stat. § 1–39–105 (1988); for operation of a building, recreational area or public park in Wyo. Stat. § 1–39–106; or for peace officers in Wyo. Stat. § 1–39–112 (1988).

*Huitt,* 844 P.2d at 1104–1105. Citing *Huitt,* the district court reached a similar conclusion by employing the rule of *expressio unius est exclusion alterius* and held that because the statute enumerated certain activities to be included, it should be construed as excluding all things not expressly mentioned. The County Defendants echo the district court and also contend that if firefighting is not covered, then certainly a page by a county dispatcher to volunteer firefighters should also not be included as part of the operation of a public utility. However, Rice argues that *Huitt* should not be read this way, in light of the language of the statute and this Court's subsequent decision in *Sponsel.*

[¶ 19] In *Sponsel,* this Court considered whether erecting and maintaining highway signage qualified as a "public utility or service" under § 1–39–108. There, this Court noted the statute provides for liability for "operation of public utilities and services including gas, electricity, water," etc. *Sponsel,* ¶ 11, 126 P.3d at 109. Because of the word "including" that preceded the list of public utilities, *Sponsel* recognized the enumerated utilities could not be interpreted as an exclusive list:

[T]he use of the word 'includes' is significant because 'includes' generally signifies an intent to enlarge a statute's application, rather than limit it, and it implies the conclusion that there are other items includable, though not specifically enumerated. That general rule certainly has vitality, but it cannot so broaden the statute at issue here, so as to make a 'public service'

of all things that are a 'public responsibility,' without regard as to whether or not they are somehow related to the more limited concept of 'public utilities and services.'

*Sponsel,* ¶ 12, 126 P.3d at 109. Ultimately, in *Sponsel* the decision was that a failure to communicate a dangerous condition by use of a road sign did not fall within the public utility exception to liability even though the county undertook the responsibility to provide proper road signage. We reasoned that "[t]he statutory construction rule of *ejusdem generis* instructs us that the legislature must have intended a catch-all phrase to include things similar to those specifically listed." *Sponsel,* ¶ 16, 126 P.3d at 109 (citations omitted).

[¶ 20] As in *Sponsel,* we apply the same statutory construction rule here. Although *Sponsel* recognized that the enumerated utilities in the statute is not an "exclusive" list, we cannot extend that list to the fire page system at issue in this case, in part because of our holding in *Huitt,* which says that firefighting is not similar to or of the same genre as "gas, electricity, water, solid or liquid waste collection or disposal, heating and ground transportation." *Huitt,* 844 P.2d at 1105. Although the fire page system is not firefighting, we nevertheless reject Mr. Rice's argument that it qualifies as a public utility. Section 1–39–108 cannot be construed to make a public service of all things that are a "public responsibility." [5]

**Governmental Immunity, Wyo. Stat. Ann. § 1–39–112 (Tortious Conduct of Peace Officers)**

[¶ 21] Next, Mr. Rice also claims that the district court erred in granting summary judgment to the County Defendants (specifically, Sheriff Pownall) on his claim that governmental immunity should be waived under Wyo. Stat. Ann. § 1–39–112 (LexisNexis

2009), which states, "[a] governmental entity is liable for damages resulting from tortious conduct of peace officers while acting within the scope of their duties."

[¶ 22] Rice claims on appeal that Sheriff Pownall assumed a duty to provide and maintain the communication system, to alert law enforcement and firefighters in the event of an emergency, and to provide a reliable and dependable means for his agency and many other agencies within Campbell County to have interoperable communications in times of emergency. According to Rice, when the Sheriff failed to heed the advice and warnings of private companies that maintained and upgraded the system, and when he failed to take precautions to avoid delay if the system failed, he was negligent.

[¶ 23] Although the legislature waived sovereign immunity for the tortious conduct of peace officers, we have recognized for some time that the waiver is limited by the common law concept of qualified immunity. See *DeWald, supra; Kimbley v. City of Green River,* 663 P.2d 871 (Wyo.1983). We explained the basis for qualified immunity in *Blake v. Rupe,* 651 P.2d 1096, 1109 (Wyo. 1982):

[A] qualified immunity is available to officers of the executive branch of government, the variation being dependent upon the scope of discretion and responsibilities of the office and all the circumstances as they reasonably appeared at the time of the action on which liability is sought to be used. It is the existence of reasonable grounds for the belief formed at the time and in light of all the circumstances, coupled with good-faith belief, that affords a basis for qualified immunity of executive officers for acts performed in the course of official conduct.

5. Note the Wyoming State Legislature extended immunity to those providing "911" services. Wyo. Stat. Ann. § 16–9–108 (LexisNexis 2009) states:

A governmental entity, public safety agency, local exchange access company, telephone exchange access company or wireless carrier that provides access to an emergency system

or any officers, agents, or employees thereof is not liable as a result of any act or omission except willful and wanton misconduct or gross negligence in connection with developing, adopting, operating or implementing emergency telephone service, enhanced wireless 911 service or any 911 system.

The determination of a peace officer's entitlement to qualified immunity under state law is governed by the consideration of four factors: (1) The officer was acting within the scope of his duties; (2) the officer was acting in good faith; (3) the officer's acts were reasonable under the circumstances; and (4) the officer's acts were discretionary duties and not merely operational or ministerial duties. *Board of County Comm'rs v. Bassett,* 8 P.3d 1079, 1087 (Wyo.2000).

[¶ 24] In the context of qualified immunity, the term "discretionary" is understood to be limited to "executive policy functions." *Bassett,* 8 P.3d at 1087. Conversely, the term "ministerial" refers to when

it is absolute, certain, and imperative, involving merely the execution of a set task, and when the law which imposes it prescribes and defines the time, mode, and occasion of its performance with such certainty that nothing remains for judgment or discretion.

*Oyler v. State,* 618 P.2d 1042, 1048 (Wyo. 1980). Decisions by an elected official regarding expenditures on equipment, the type of equipment, and replacement parts are within the purview of an elected official's discretion; the decisions by Sheriff Pownall as to when to replace the fire page equipment is certainly within his discretion. He testified to that at length in his deposition. While we will refrain from repeating his testimony verbatim, after reviewing the record, we are assured from that testimony that the Sheriff knew that the system was out of date, and that he was taking steps, in good faith, to replace it.

Q: In your initial term and in this term, what kind of a priority have you put on the communication systems in general in trying to bring them all the things you've been telling us about?

A: It's been a top priority since I took office, since I learned, basically, that the system was old. And I knew that. I mean, I knew it was old. And I knew—with technology today, I mean, it seems to change on a daily basis, almost. But we were trying[.]

[¶ 25] The Sheriff was acting within the scope of his duties, in good faith, in determining when to replace the equipment at issue. We fail to see any tortious conduct while doing so.

**Governmental Immunity, Wyo. Stat. Ann. § 1–39–106 (Negligent Operation of Building)**

[¶ 26] Rice also claims that the County Defendants are not entitled to immunity from liability under Wyo. Stat. Ann. § 1–39–106 (LexisNexis 2009), which provides as follows:

A governmental entity is liable for damages resulting from bodily injury, wrongful death or property damage caused by the negligence of public employees while acting within the scope of their duties in the operation or maintenance of any building[.]

The district court found this section inapplicable, stating "the facts do not indicate a building was involved in this instance," and that "the failure of a repeater does not implicate negligence in the operation of a building in which it is housed." In *State Dept. of Corrections v. Watts,* 2008 WY 19, 177 P.3d 793 (Wyo.2008), this Court decided that:

[T]he legislature intended to limit the waiver of [governmental] immunity to negligence associated with the function of the building structure and did not intend to extend the waiver to negligence associated with operation of the penal institution within the building.

*Watts,* ¶ 38, 177 P.3d at 802.

[¶ 27] Rice argues that the "buildings" at issue in this case are the various "tower sites" around Campbell County that house the actual repeaters, transmitters, and other communication equipment. According to Rice, those buildings were prone to extreme temperature variations, contributing to poor functionality of the equipment. Rice argues that the failure to follow guidelines with regard to moisture and temperature control is thought to be one possible cause for the failures in the system components, which culminated in the negligence by the County Defendants.

[¶ 28] Our discussion in *Watts* is instructive as to Rice's argument. We stated:

We are not, however, inclined to agree that any "unsafe condition," beyond those involving the building itself, should come within the statute, especially when interpreted as broadly as the New Mexico Supreme Court did in *Upton* [*v. Clovis Municipal School Dist.*, 140 N.M. 205, 141 P.3d 1259 (2006)]. Instead, we believe the waiver of immunity in Wyoming was intended to apply only if the unsafe condition is due to a physical defect in the building. The concept of physical defect would include any safety features mandated by applicable law, as recognized by the New Mexico court of appeals in *Williams* [*v. Central Consol. School Dist.*, 124 N.M. 488, 952 P.2d 978 (Ct.App.1997)].

. . . .

We, therefore, conclude the clear and unambiguous language of § 1–39–106, within the context of the rest of the WGCA, indicates that the legislature intended to limit the waiver of immunity to negligence associated with the function of the building structure and did not intend to extend the waiver to negligence associated with operation of the penal institution within the building. The operation and maintenance responsibility includes fixtures attached to the building. Moreover, like the New Mexico court of appeals recognized in *Williams,* if applicable building codes, statutes or ordinances mandate that certain safety features be installed or in use in the building, then liability would extend to injuries arising from the failure of the governmental entity to install or maintain those devices. We have no difficulty stating that such matters fall within the definition of operation of public buildings because they are necessary to make the building legally functional. We do, as always, take this opportunity to invite the legislature to revise the statute if we have not interpreted it in accordance with its intent.

*Watts,* ¶¶ 36, 38, 177 P.3d at 802.

[¶ 29] Turning to the facts once again, we conclude that the district court ruled correctly when it granted summary judgment to the County Defendants, affirming their governmental immunity under § 1–39–106. Assuming a problem occurred with communication equipment, that equipment does not qualify as a "building" as contemplated by the statute. Rather, that communication equipment does not operate as part of the building structure and, accordingly, its failure does not extend the waiver to any negligence associated with the operation of that communication equipment within the building.

## CONCLUSION

[¶ 30] The district court is affirmed on all issues. First, Collins and ComTech owed no duty of care to Rice in operating and maintaining an emergency communications system for Campbell County, when the failure of that system delayed the fire department's response to the fire that led to the destruction of Rice's building and property. As to the three governmental immunity claims Rice brings on appeal, there is no waiver of governmental immunity in any of those claims. For purposes of this appeal, the fire page system cannot be considered a public utility under the statute; Sheriff Pownall acted in good faith and within the scope of his duties, and did not exhibit tortious conduct, and the communication equipment at issue cannot be classified as a "building" for purposes of the statute. Finding no duty, Rice's fifth and final argument regarding proximate cause was not addressed. Affirmed.