# MILLER v. BUCK CREEK OIL CO.

(No. 1470; July 17, 1928; 269 Pac. 43)

*Thomas M. Fagan,* for appellant.

*M. H. Neil, Smith & Brock,* and *John P. Akolt,* for respondent.

Kimball, Justice.

The plaintiff is one of the lessors and the defendant the lessee in an oil and gas lease of lands held by the lessors as placer mining claims.

The lease is dated September 22, 1917, and recites that the lessors have "leased, let and demised" to the defendant the described lands "for the purpose of drilling for petroleum, gas and other minerals, and of extracting the minerals from the land." It is for the term of 18 months and as long thereafter as oil or gas may be found upon the premises in paying quantities. The defendant agrees "to pay to the lessors the sum of twelve and one-half per cent. of the net returns from the sales of all petroleum, asphaltum, oil and other minerals which may be discovered, produced and saved from said land." It is then provided that the "royalty hereinbefore reserved" shall be paid to the lessors on or before the 15th day of every month for all oil or other products produced and sold during the previous calendar month," and "that the lessors shall have the option upon service of written notice to that effect upon the lessee to receive their royalty in kind."

The defendant, operating under this lease, has discovered oil which has been and is being produced and sold from the land. The lessors have not exercised the option to take their royalty in kind, and therefore are entitled to 12½ per cent. of the "net returns from the sales" of the oil so produced and sold. The defendant, in settling with the lessors for their royalty, has deducted the lessors' proportion of the tax levied under the law presently noticed. Its right to make that deduction is the only question in the case. The District Court found that the deduction was proper, and from the judgment for defendant the plaintiff appeals.

The tax in question is levied under statutes evidently enacted to carry out the provision of Section 3 of Article XV of the State Constitution, viz:

"All mines and mining claims from which * * * mineral oil or other valuable deposit, is or may be produced shall be taxed in addition to the surface improvements,

and in lieu of taxes on the lands, on the gross product thereof, as may be prescribed by law; provided, that the product of all mines shall be taxed in proportion to the value thereof.''

The statutes are Secs. 2906-2911, W. C. S. 1920. Section 2906 provides that:

''The gross product of all mines and mining claims from which * * * petroleum, or other crude or mineral oil, or natural gas, or other valuable deposit is, or may hereafter be produced, while the same are being worked or operated, but not while the same are simply in the course of development, shall be returned by the owner, owners, lessee, or operator thereof for assessment for taxation, and taxed in the manner provided for in this chapter, and such tax shall be in addition to any tax which may be assessed upon the surface improvements of such mines or mining claims, and in lieu of taxes upon the land of such claims while the same are being worked or operated.''

Section 2907 requires that the owner, owners, lessee or operator of mines or mining claims producing oil shall, not later than the second Monday of January of each year, file with the state board of equalization a sworn assessment schedule statement setting forth the gross product of such mine or mineral claim during the preceding calendar year; Section 2908 requires that the state board of equalization fix the valuation of such gross product for assessment; Section 2909 provides that the valuation and assessment made and determined by the state board of equalization shall be certified by the state auditor to the assessor of the county where the property is situated, and that the county assessor shall enter such valuation and assessment upon the lists of taxable property in the assessment rolls of the county.

The tax is evidently a property tax rather than a license, privilege or occupational tax. In the absence of an agreement in regard to the payment of taxes on property, it will be assumed that the parties intended that the owner of the property should pay them. Where a lease is silent

on the subject, the obligation to pay taxes would ordinarily rest upon the lessor, but this general rule yields to a contrary presumption where overbalancing considerations lead to that result. Pittsfield & N. A. R. Corp. v. Boston & A. R. Co., (Mass.) 157 N. E. 611. Thus, a lessee who is the virtual owner of the property may be considered the owner for the purposes of taxation. Norfolk v. J. W. Perry Co., 108 Va. 28, 61 S. E. 867, 35 L. R. A. (N. S.) 167, 123 Am. St. Rep. 940.

It is perhaps doubtful whether the tax in question ought to be considered a tax upon the mining claim or upon the oil produced therefrom. While it is based upon the value of the oil, it is declared to be in lieu of taxes on the mining claim. We are informed that it is the practice of the state board of equalization to assess the entire tax against the operating and producing company. Royalty interests are not separately taxed. The propriety of the practice is not questioned. It has been followed in this case, and the entire tax has been assessed against, and paid by, the lessee. The practical result is that the tax paid by the lessee is in lieu not only of taxes on the mining claim, but also of taxes on the lessors' royalty interest. It would seem no more than just that, in the absence of contract, the tax ought ultimately to be borne by the parties in proportion to their respective interests in the production that is the basis of the tax. If a mining lease provides that the lessor shall have as royalty a certain share (which might in some cases be a very large share) of the minerals taken from the land, it might well be considered, for the purpose, at least, of taxation, that the lessor was the owner of the oil which he received as royalty, and assumed that, in the absence of an agreement in regard to the payment of a property tax based on production, each party to the lease intended that he should be liable for the tax on his share of the production. See Wolfe County v. Beckett, 127 Ky. 252, 105 S. W. 447, 17 L. R. A. (N. S.) 688.

510

The foregoing general observations may assist in arriving at the intention of the parties to be gathered from the lease which we shall now consider. The lease makes no specific mention of taxes, and it is likely that they were not thought of at the time. The lessors are entitled to one-eighth of the "net returns from the sales" of the oil produced and saved. The use of the word "net" shows an intention to deduct something from the "gross" returns. The plaintiff lessor claims that the only authorized deductions are expenses incident to the sale, and that taxes cannot properly be considered as a part of such expenses. The lessee contends that the taxes are an expense incident to the sale, because the prices obtained were paid by the buyer on the theory that the taxes would be paid by the lessee, the seller. In other words, that the lessee had to pay the taxes in order to sell the oil for the price that was obtained. Whether or not the taxes paid by the lessee may properly be considered an expense incident to the sale, we believe the lessee had the right to deduct them on a somewhat broader ground.

The lessors had the right to demand their royalty in kind, that is, they might have demanded one-eighth of the oil instead of one-eighth of the net returns from the sales of the oil. Had the lessors elected to take their share in oil, and the lessee had paid the tax on the entire production, it would be clear, we think, that, for the purpose of determining the ultimate liability for the tax, the lessors should be considered as part-owners of the taxed property, and held liable for their proportionate share of the tax paid by the lessee. When it was stipulated that the lessors might take their royalty from the net returns of the sales of oil, or in kind, we cannot believe that the parties intended that the liability for a tax based on the production should be any different in one case than in the other. While the lessee was selling all the oil, and paying the lessors' royalty in money, it was in effect acting as the lessors' agent in disposing of their royalty interest. We think the tax on the valuation representing that interest was property deduct-

ible from the gross amount received for the interest. It follows that the judgment of the District Court must be affirmed.

BLUME, Ch. J., and RINER, J., concur.