2012 WY 53

**John SUTHERLAND and Minerva Selbe Sutherland, Appellants (Plaintiffs),**

v.

**MERIDIAN GRANITE COMPANY, a Delaware Corporation, d/b/a Martin Marietta Materials, Appellee (Defendant).**

**Meridian Granite Company, a Delaware Corporation, d/b/a Martin Marietta Materials, Appellant (Defendant),**

v.

**John Sutherland and Minerva Selbe Sutherland, Appellees (Plaintiffs).**

Nos. S–11–0091, S–11–0092.

Supreme Court of Wyoming.

April 10, 2012.

Representing Sutherlands: Bruce S. Asay, Associated Legal Group, LLC, Cheyenne, Wyoming.

Representing Meridian Granite Company: Franklin D. O'Loughlin and Jaclyn K. Casey, Rothgerber, Johnson & Lyons, LLP, Denver, Colorado. Argument by Mr. O'Loughlin.

Before KITE, C.J., and GOLDEN, HILL, VOIGT, and BURKE, JJ.

BURKE, Justice.

[¶1] John Sutherland and Minerva Selbe Sutherland entered into a mining lease granting Meridian [1] the right to conduct mining operations on the Sutherlands' property. A dispute developed between the Sutherlands and Meridian regarding the Sutherlands' obligation to pay taxes relating to the mineral production. The dispute led to litigation. On cross-motions for summary judgment, the district court ruled that the Sutherlands were obligated to pay the disputed taxes. It therefore granted Meridian's motion and denied the Sutherlands'. The Sutherlands appealed the district court's ruling, and Meridian filed a cross-appeal. We affirm.

## ISSUES

[¶2] The Sutherlands present a single issue:

Did the district court err in allowing Meridian to deduct ad valorem and severance taxes from payments to the Sutherlands

---

1. The mining lease was signed by the president of Meridian *Aggregates* Company, while the defendant named in this case is Meridian *Granite* Company. The record does not indicate the relationship between the two companies, and the parties appear to make no distinction. In this opinion, we will refer to the Appellee generally as "Meridian."

when such tax payments are not required by the State?

In its cross-appeal, Meridian raises four issues:

A. Did the district court err in allowing the Sutherlands to pursue claims barred by the applicable statutes of limitation?

B. Did the district court err when it failed to dismiss the Sutherlands' claims based on the doctrine of laches?

C. Did the district court err in allowing the Sutherlands to pursue a claim for declaratory judgment when the Sutherlands simultaneously asserted a claim for breach of contract?

D. Did the district court err in denying Meridian's motion to dismiss for failure to join an indispensable party, where the party not joined was a party to the contract at issue?

### FACTS

[¶ 3]   In September, 1988, the Sutherlands executed a mining lease with Granite Canyon Quarry, a joint venture, with Meridian as the "managing joint venturer." The single mining lease covers two separate parcels of property, identified as "Parcel 1" and "Parcel 2." The Sutherlands own both the surface estate and the mineral estate of Parcel 1, but only the surface estate of Parcel 2.[2] The mining lease requires Meridian to pay a "Production Royalty" to the Sutherlands of 10¢ per ton on all minerals produced and sold from Parcel 1, and 6¢ per ton on all minerals produced and sold from Parcel 2.[3]

[¶ 4]   With regard to the payment of taxes, the mining lease contains this provision:

Lessor [Sutherlands] shall pay when due all general and ad valorem taxes levied and assessed against the Premises and any taxes imposed upon or measured by advance royalties or Production Royalties paid to Lessor. Lessee [Meridian] shall pay when due all taxes lawfully assessed and levied against improvements and equipment placed upon the Premises by Lessee, upon production from the Premises except such portions thereof as are payable for Production Royalty paid to Lessor and upon other rights, property and operations of Lessee.

[¶ 5]   Throughout the term of the mining lease, Meridian has made royalty payments to the Sutherlands, but has withheld amounts asserted by Meridian to reflect the Sutherlands' share of ad valorem and severance taxes. The amounts withheld by Meridian have been used to pay a portion of the taxes paid by Meridian. The Sutherlands objected to Meridian's withholding as early as 1990, when mining operations were being conducted only on Parcel 1. They maintained their objections in 2003 after mining operations began on Parcel 2. After considerable correspondence between the parties, the Sutherlands acquiesced to Meridian's withholding taxes relating to mineral production on Parcel 1, but continued to object to withholding taxes relating to mineral production on Parcel 2. The Sutherlands' position, simply stated, was that they owed taxes for Parcel 1 because they owned the minerals, but they did not owe taxes for Parcel 2 because they did not own the minerals. Meridian continued to assert that the Sutherlands were liable for taxes for both Parcel 1 and Parcel 2.

[¶ 6]   On May 7, 2008, the Sutherlands filed a complaint against Meridian in state district court, claiming generally that Meridian was wrongfully withholding taxes for Parcel 2. They asserted a breach of contract claim and also sought declaratory judgment. Meridian answered, raised several affirmative defenses, and filed a motion to dismiss. Both parties filed motions for summary judgment. After a hearing, the district court

---

**2.** The mineral lease indicates that the BLM owned the mineral estate of Parcel 2 as of the date of the lease, but Meridian was "attempting to acquire" those minerals. The record reflects that Meridian has conducted mining operations on Parcel 2, but does not establish how Meridian acquired the rights to do so, or whether the mineral estate is now owned by Meridian or the BLM. As these details prove unnecessary to our decision, we, like the parties, will overlook them.

**3.** The mineral lease also provides for "Advance Royalty" payments, but these are only prepayments of the "Production Royalty," and Meridian may "recoup and recover all such Advance Royalty payments [by reducing the] Production Royalty which may become payable" to the Sutherlands.

denied Meridian's motion to dismiss. It denied the Sutherlands' motion for summary judgment. It granted Meridian's motion for summary judgment, ruling against Meridian on the affirmative defenses but in favor of Meridian on the merits. Both parties filed timely appeals.

### STANDARD OF REVIEW

[¶ 7] We review a district court's summary judgment rulings *de novo*, using the same materials and following the same standards as the district court. The facts are considered from the vantage point most favorable to the party who opposed the motion, and we give that party the benefit of all favorable inferences that may fairly be drawn from the record. *Cook v. Shoshone First Bank*, 2006 WY 13, ¶ 11, 126 P.3d 886, 889 (Wyo.2006); *Garcia v. Lawson*, 928 P.2d 1164, 1166 (Wyo.1996). Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. W.R.C.P. 56(c).

### DISCUSSION

[¶ 8] A mineral lease is a contract, and is interpreted under general principles of contract interpretation. *Wyoming Bd. of Land Comm'rs v. Antelope Coal Co.*, 2008 WY 60, ¶ 8, 185 P.3d 666, 668 (Wyo.2008). Our purpose in interpreting any contract is to ascertain the true intent of the parties. *State v. Pennzoil Co.*, 752 P.2d 975, 978 (Wyo.1988). If the language of a contract is plain and unequivocal, that language is controlling. *Dewey v. Dewey*, 2001 WY 107, ¶ 20, 33 P.3d 1143, 1148 (Wyo.2001). The plain meaning of the contract is the meaning which the language would convey to reasonable persons at the time and place of its use. *Dickson v. Thomas (In re Estate of Thomas)*, 2009 WY 10, ¶ 7, 199 P.3d 1090, 1094 (Wyo. 2009). We interpret the language of an unambiguous agreement as a matter of law, and rely on extrinsic evidence only if the contract is ambiguous. *Union Pacific Resources Co. v. Texaco*, 882 P.2d 212, 219–20 (Wyo.1994).

[¶ 9] The parties do not dispute any material facts, leaving only the question of which party is entitled to judgment as a matter of law. The key to answering this question is the language of the mining lease governing the payment of taxes, excerpted here:

> Lessor [Sutherlands] shall pay when due all general and ad valorem taxes levied and assessed against the Premises and any taxes imposed upon or measured by advance royalties or Production Royalties paid to Lessor.

[¶ 10] The Sutherlands focus on the lease's requirement that they must pay "all general and ad valorem taxes levied and assessed against the Premises." They assert that the mining lease defines the term "Premises" to refer to the surface and mineral estates of Parcel 1, but only to the surface estate of Parcel 2. Severance and ad valorem taxes on Parcel 2 are therefore not levied against the "Premises," and on this basis, the Sutherlands contend that they are not required to pay these taxes.

[¶ 11] We agree with the Sutherlands that the taxes at issue are not levied or assessed against "the Premises." Indeed, in Wyoming, mineral severance and ad valorem taxes are imposed on the mineral product after severance, not upon the lands or "Premises" at all. *See Oregon Basin Oil & Gas Co. v. The Ohio Oil Co.*, 70 Wyo. 263, 280, 248 P.2d 198, 205 (Wyo.1952). However, the Sutherlands overlook the fact that the mining lease requires them to pay taxes levied against the Premises *"and* any taxes imposed upon or measured by advance royalties or Production Royalties paid to Lessor." (Emphasis added.) The Sutherlands are obligated to pay not only taxes levied against the Premises, but also taxes imposed upon or measured by royalties.

[¶ 12] The taxes at issue in this case are "imposed upon or measured by advance royalties or Production Royalties paid to Lessor." Meridian asserts that royalty payments are, and must be, included in the calculation of severance and ad valorem taxes. In support of that assertion, Meridian offered undisputed evidence on summary judgment that the Wyoming Department of Revenue's Form 8301, the "Annual Gross Products Re-

port for Miscellaneous Minerals," requires the taxpayer to report all royalties. Of particular significance to this case, Form 8301 specifically requires the taxpayer to include the value of the private royalties as part of the taxable value of the minerals. Because the taxable value of the minerals includes the value of the private royalties, it follows that the severance and ad valorem taxes at issue are "measured by" the royalties Meridian pays to the Sutherlands. Accordingly, the unambiguous language of the mining lease obligates the Sutherlands to pay the taxes attributable to those royalties.

[¶ 13] The Sutherlands argue against this conclusion, emphasizing that the State of Wyoming imposes severance and ad valorem taxes only on the owner of the minerals. They rely on the established Wyoming rule that, "with regard to taxes assessed on the gross products of a mine or well, both the lessee and lessor are responsible for payment in proportion to their ownership shares." *Ashland Oil Co. v. Jaeger*, 650 P.2d 265, 268 (Wyo.1982), citing *Miller v. Buck Creek Oil Co.*, 38 Wyo. 505, 269 P. 43 (1928), and *Oregon Basin Oil & Gas Co. v. Ohio Oil Co.*, 70 Wyo. 263, 248 P.2d 198 (1952). As the Sutherlands do not own any share of the mineral estate of Parcel 2, they assert that they are not liable for any share of the taxes.

[¶ 14] The Sutherlands also point to Wyo. Stat. Ann. § 39–14–703(c)(i) (LexisNexis 2007), which provides that "the lessor is liable for ... taxes on the product removed *only to the extent of the lessor's retained interest under the lease,* whether royalty or otherwise, and the lessee or his assignee is liable for all other property taxes due on production under the lease." (Emphasis added.) As the Sutherlands do not own the mineral estate of Parcel 2, they have no "retained interest" in the minerals, and so claim that they are not liable for the taxes.[4]

[¶ 15] The consistent flaw in the Sutherlands' arguments is that they disregard the language of the mineral lease. The Sutherlands are correct about the general rule that lessors and lessees pay taxes in proportion to their ownership interests. But that rule is general only, and does not apply in all cases. As we said in *Ashland,* 650 P.2d at 268, "the rule will be applied *unless the parties to the lease specifically provide as part of their agreement that some other arrangement for payment of taxes on the gross product has been agreed upon."* (Emphasis added.) Similarly, in *Miller,* 38 Wyo. at 509, 269 P. at 45, we said that, "It would seem no more than just that, *in the absence of contract,* the tax ought ultimately to be borne by the parties in proportion to their respective interests in the production that is the basis of the tax." (Emphasis added.)

[¶ 16] There is no absence of contract in the case before us. The mining lease provides that the Sutherlands must pay "any taxes imposed upon or measured by advance royalties or Production Royalties paid to Lessor." When the Sutherlands and Meridian specifically agreed to some other arrangement for the payment of taxes, they rendered the general rule inapplicable.

[¶ 17] As to the Sutherlands' statutory argument, they may be correct that the government would hold only Meridian, not the Sutherlands, liable for the severance and ad valorem taxes. But as between themselves, the Sutherlands and Meridian agreed to allocate the tax burdens differently. That agreement may not be binding on the government when it collects the taxes, but it is valid and enforceable between the Sutherlands and Meridian when they pay the taxes.

---

4. The Sutherlands further contend that, because they do not own the mineral estate of Parcel 2, the payments they receive from Meridian are not royalties at all, but only payments for surface damage. We agree that their interest in Parcel 2 is not a typical lessor's royalty, which is "created upon the granting of a leasehold in the mineral estate by means of a reservation to the owner." 3 Rocky Mountain Mineral Law Foundation, *American Law of Mining* § 85.02[2][a] (2d ed. 2011). However, the term royalty is defined more broadly to include "[c]ompensation for the use of property, usually copyrighted material or natural resources, expressed as a percentage of receipts from using the property or as an account per unit produced." *Black's Law Dictionary* 1330 (6th ed. 1990). The Sutherlands are compensated for use of the surface of Parcel 2 by payment of 6¢ per ton produced, and these payments may be referred to as royalties. But as the district court observed, "the exact nature of the Sutherlands' ownership interest ... [is] of little importance given the clear language of ... the lease."

As the district court reasoned, "Ultimately, the Court need not decide whether the Sutherlands would owe the taxes under [Wyo. Stat. Ann.] § 39–14–703(c), because the plain language of the lease imposes tax liability upon the Sutherlands."

[¶ 18] Finally, we consider the Sutherlands' assertion that their tax obligation on Parcel 2, where they own only the surface estate, should be different from their tax burden on Parcel 1, where they own both surface and minerals. Again, the Sutherlands' argument ignores the language of the mining lease, which requires Meridian to pay the Sutherlands only 6¢ per ton on all minerals produced and sold from Parcel 2, but 10¢ per ton on all minerals produced and sold from Parcel 1. Because the Sutherlands receive less royalty on minerals produced from Parcel 2, they also pay less in taxes. More significantly, the royalty provision of the mining lease demonstrates that Meridian and the Sutherlands could, and did, draft provisions treating the parcels differently when they intended to treat them differently. In contrast, the mining lease's provision for taxes makes no distinction between Parcel 1 and Parcel 2. This helps to confirm the conclusion that the plain language of the mining lease reflects the parties' intent that the Sutherlands would pay their share of taxes on both Parcel 1 and Parcel 2.

[¶ 19] The district court did not err when it denied the Sutherlands' motion for summary judgment and granted summary judgment in favor of Meridian. As Meridian recognizes in its cross-appeal brief, our affirmation of the district court's judgment makes it unnecessary to address the issues raised by Meridian in its cross-appeal.

[¶ 20] Affirmed.

BURKE, J., delivers the opinion of the Court; HILL, J., files a dissenting opinion, in which GOLDEN, J., joins.

HILL, Justice, dissenting with whom, GOLDEN, Justice, joins.

[¶ 21] I respectfully dissent from the majority opinion. In September of 1988 the Sutherlands executed a mining lease with Granite Canyon Quarry, a joint venture, by Meridian Aggregates Company, "the managing joint venturer." The mining lease involves two separate parcels identified as Parcel 1 and Parcel 2. As to Parcel 1 the Sutherlands own both the surface estate and mineral estate. Parcel 2 is a split estate where the Sutherlands own the surface estate and the BLM at the time of the execution of the lease owned the mineral estate. Exhibit A contains the legal descriptions and identifies the parcels as follows: "PARCEL 1 (Lessor owns surface and mineral estate)" and "PARCEL 2 (Lessor owns surface estate only)."

[¶ 22] Article XIII of the lease, entitled "BLM EXCHANGE" at Section 13.1 provides:

> Lessors and Lessee understand that Lessee is attempting to acquire from the Bureau of Land Management ("BLM") the minerals owned by BLM in certain of the lands comprising the Premises.

This provision clearly provides that at the time of the lease Meridian was seeking the right to take and produce the minerals from the BLM. The only interest owned by the Sutherlands and transferred to Meridian at the time of the lease with regard to Parcel 2 was the surface rights. At the time of the mining of the minerals acquired by Meridian from the BLM as to Parcel 2, the surface would be exempt from Wyoming mineral taxation as stated in Wyo. Const., art. 15, § 3, which provides:

> All mines and mining claims from which gold, silver and other precious metals, soda, saline, coal, mineral oil or other valuable deposit, is or may be produced shall be taxed in addition to the surface improvements and *in lieu* **of taxes on the lands, on the gross product thereof,** as may be prescribed by law; provided, that the product of all mines shall be taxed in proportion to the value thereof. [Emphasis added.]

[¶ 23] As we explained in *Oregon Basin Oil & Gas Co. v. Ohio Oil Co.,* 70 Wyo. 263, 248 P.2d 198, 203 (1952):

> Here in section 3 of Article 15, we have a restriction with respect to the taxation of lands. In the law of taxation this inhibi-

tion is unusual yet it is found in constitutions of the western states. It is a wise provision. The early settlers and pioneers who developed the West were aware of the necessity for such a provision. Many an early day mining prospector held on to his claim, with a pick and shovel and a sack of grub, because he was sure that his claim would not be lost through a tax sale. It was found through practical experience that it was time enough to levy a tax when the prospector had produced something with which to pay.

[¶ 24] In *Board of Comm'rs v. Bernardin,* 74 F.2d 809, 812–13 (10th Cir.1934) the Tenth Circuit Court of Appeals noted,

The phrase 'in lieu of taxes on the land,' indicates that the tax is to be imposed on the product instead of the land, and that the latter is to be exempted during such time as it is being worked or operated for the production of minerals.

*Id.* at 812–13.

[¶ 25] With regard to the payment of taxes, the lease at Article VII provides:

[L]essor shall pay when due all general and ad valorem taxes **levied and assessed against the Premises** and **any taxes imposed upon or measured by advance royalties or Production Royalties paid to Lessor. Lessee shall pay** when due all taxes lawfully assessed and levied against improvements and equipment placed upon the Premises by Lessee, **upon production from the Premises except such portions thereof as are payable for Production Royalty paid to Lessor and upon other rights, property and operations of Lessee.** Provided, however, that nothing contained herein shall impose upon either party any obligation to pay any taxes levied or assessed against the other party in the nature of an income tax. [Emphasis added.]

[¶ 26] The Wyoming gross products tax is a property tax which taxes the value of the mineral produced. The gross product tax is an ad valorem tax on personal property. *Ashland Oil Co. v. Jaeger,* 650 P.2d 265, 268 (Wyo.1982). The Sutherlands have never owned or claimed any ownership in the minerals produced from Parcel 2.

[¶ 27] The Sutherlands assert that as owners of only the surface of Parcel 2, they have no responsibility or liability under Wyoming law for the payment of taxes imposed upon minerals produced from Parcel 2. I agree. The surface estate becomes tax exempt under the Wyoming Constitution when minerals are produced on this estate.

[¶ 28] Although the Sutherlands can agree to pay taxes for Meridian by contract, it is not equally true that Meridian can impose taxes on an otherwise exempt interest and thereafter deduct the taxes on the exempt interest from their own tax liability. In other words, only the State, more specifically the legislature, can impose taxes. In addition, even the legislature could not impose a tax where the constitution exempts the surface interest as to Parcel 2. Wyo. Const., art. 15, § 14 provides "The power of taxation shall never be surrendered or suspended by any grant or contract to which the state or any county or municipal corporation shall be a party." Section 13 states, "[n]o tax shall be levied, except in pursuance of law, and every law imposing a tax shall state distinctly the object of the same, to which only it shall be applied."

[¶ 29] The law as it related to the imposition of Wyoming production taxes in 1988 becomes part of the contract. *Century Ready–Mix Co. v. Lower & Co.,* 770 P.2d 692, 696 (Wyo.1989). From statehood to the present time, ad valorem or property tax on minerals has been and is imposed upon the minerals produced from the land **in lieu** of the taxes on the lands.

[¶ 30] Ownership of the minerals is the important question for ad valorem tax liability purposes. *See, e.g.,* Wyo. Stat. Ann. §§ 39–3–101(c)(d) and 39–3–102(d) (Michie 1990); *Union Pac. Resources Co. v. State,* 839 P.2d 356, 361 (Wyo.1992); *Bernardin,* 74 F.2d 809. The ad valorem tax on mineral production is a tax on the value of the minerals as produced. *Union Pac. Resources Co.,* 839 P.2d at 361. *Wyoming State Tax Comm'n v. BHP Petroleum Co.,* 856 P.2d 428, 439 (Wyo.1993). Here, the Sutherlands would only be "taxpayers" for ad valorem taxes with regard to Parcel 2 production if

they owned, or had an interest in, the minerals at the time of production.

[¶ 31] The authority to create a taxpayer belongs exclusively to the Wyoming legislature and we have no power or authority to expand taxpayer status. Wyo. Const., art. 15, § 3; *Rocky Mountain Oil & Gas Ass'n v. State Bd. of Equalization*, 749 P.2d 221, 240 (Wyo.1987). Under Wyoming law Meridian cannot cause the Sutherlands to become "taxpayers" when the Sutherlands would not otherwise be subject to the taxes under Wyoming law. Meridian cannot by virtue of Wyoming law subject the surface estate to Wyoming mineral taxes by simply defining the terms of the payment for the surface estate as a royalty. The surface, regardless of how the parties to a contract define the compensation for the surface, remains exempt under Wyoming law during the mining of the minerals. With regard to minerals produced under lease, the

> lessor [was] liable for the [payment] of [property] ad valorem taxes on the product removed only to the extent of the lessor's retained interest under the lease, whether royalty or otherwise, and the lessee or his assignee [was] liable for all other property taxes [ad valorem] due on production under the lease[.]

Wyo. Stat. Ann. § 39–3–101(d) (Michie 1985). *See* same language in current statutes at Wyo. Stat. Ann. § 39–14–603(c)(i) (LexisNexis 2011).

[¶ 32] The relevant contract as to Parcel 2 is the contract between the BLM and Meridian. The minerals on parcel 2 are produced pursuant to a lease, a sale, or an exchange with the BLM, not the Sutherlands. Admittedly, the Sutherlands do have a retained interest in the surface, but that interest is not subject to tax, or more accurately, it is exempt under the Wyoming Constitution as explained above.

[¶ 33] The fact that the Sutherlands are compensated on a flat rate per ton for the surface rights (which is the only thing they own as to Parcel 2) does not make them the owners of the mineral production for ad valorem tax purposes. Under Wyoming constitutional and statutory law, the surface of Parcel 2 is exempt during the time the minerals are produced from the mine or mining claim. Wyo. Const., art. 15, § 3; Wyo. Stat. Ann. § 39–11–105(a)(xxviii) (LexisNexis 2011). The statute cited provides: "The following property is exempt from property taxation: ... (xxviii) Lands for mines or mining claims as prescribed by section 3, article 15, Wyoming constitution and defined by W.S. 39–11–102(c)(viii)[.]" The owners of the minerals produced from Parcel 2 would be either Meridian or the BLM, or both.

[¶ 34] Meridian received their interest in the minerals from the federal government, after they executed a contract with the Sutherlands for the surface estate of parcel 2. Upon production of the minerals from Parcel 2 the surface became exempt. The retained interest of the federal government, if any, plus the interest of Meridian became subject to the taxes due on the production of minerals.

[¶ 35] The only Wyoming taxes imposed are on the production of the minerals, which are not measured by or computed on the royalties paid to the Sutherlands as the lessor of the surface estate. The 6 cents per ton is irrelevant to the computation, measurement, or calculation of the taxes on the minerals being produced from parcel 2. The taxable estate is the mineral estate.

[¶ 36] The Wyoming Constitution controls this matter, and the Sutherlands' surface estate in Parcel 2 is exempt by Wyoming law. Meridian has no power or authority to make the Sutherlands' surface interest in Parcel 2 subject to taxes. Under the lease the lessor of the surface agreed to pay when due all general and ad valorem taxes levied and assessed against the premises. The minerals under Parcel 2 are not included in the premises nor are any taxes imposed upon or measured by advance royalties or production royalties paid to the lessor. The lessor of the minerals under Parcel 2 is the BLM, not the Sutherlands. Furthermore, while Meridian pays advance or production royalties to the Sutherlands as the lessor, there are no Wyoming taxes imposed upon or measured by the Sutherlands' surface interest. The Sutherlands' surface interest

in Parcel 2 is exempt by virtue of the mining of the minerals by Meridian acquired from the BLM.

[¶ 37] Under Parcel 1 the Sutherlands were paid a royalty on the production of the minerals of 10 cents per ton for the mining of the minerals from Parcel 1. Under Parcel 2 the Sutherlands were paid a rental of the surface, which is the only thing they owned with regard to Parcel 2, of 6 cents per ton for the surface rights. The difference is that under Wyoming law, more specifically, the Wyoming Constitution, the royalty paid for the minerals is subject to tax, while the surface is exempt. This has been the case since statehood. For these reasons I respectfully dissent.