2012 WY 118

Anne Uhr WHITE, Appellant (Defendant/Third–Party Plaintiff),

v.

SHANE EDEBURN CONSTRUCTION, LLC; Paris L. Edeburn; and Paul B. Tozer, Appellees (Plaintiffs),

and

Shane Edeburn, Appellee (Third–Party Defendant).

Anne Uhr White, Appellant (Plaintiff),

v.

Connie Webb, Shane Edeburn, Paris L. Edeburn, and Paul B. Tozer, Appellees (Defendants).

Nos. S–11–0218, S–11–0219.

Supreme Court of Wyoming.

Sept. 7, 2012.

Representing Appellant: Pro se.

Representing Appellee, Connie Webb: Billie LM Addleman and Amanda M. Good, Hirst Applegate, LLP, Cheyenne, Wyoming.

Representing Appellees, Shane Edeburn Construction, LLC, Paris L. Edeburn, Paul B. Tozer, and Shane Edeburn: Karen Budd–Falen and Brandon L. Jensen, Budd–Falen Law Offices, LLC, Cheyenne, Wyoming.

Before KITE, C.J., and GOLDEN, HILL, VOIGT, and BURKE, JJ.

BURKE, Justice.

[¶ 1] The issues presented in these appeals involve three parcels of land formerly owned by Appellant, Anne Uhr White, in the Table Mountain Ranches ("TMR") subdivision in Laramie County, Wyoming. In early 2011, Appellees Shane Edeburn Construction, LLC, Paris Edeburn, and Paul Tozer, initiated legal action to terminate Ms. White's lease on Lot 2 and Tract 12 of the TMR subdivision. Ms. White counterclaimed against these parties and added Shane Edeburn as a third-party defendant, asserting that they had violated the covenant of good faith and fair dealing in attempting to terminate the lease. Ms. White also filed a separate action against Appellees Shane Edeburn, Paris Edeburn, Paul Tozer, and real-estate agent, Connie Webb, claiming that they committed fraud and wrongfully conspired to deprive her of an opportunity to repurchase Lot 11 after she lost the property in foreclosure. In Docket No. S–11–0218, Ms. White challenges the district court's grant of summary judgment declaring the lease on Lot 2 and Tract 12 to be terminated and ordering Ms. White to vacate the property. She also challenges the district court's dismissal of her claim for breach of the implied covenant of good faith and fair dealing.

In Docket No. S–11–0219, Ms. White challenges the dismissal of her claims of fraud and conspiracy to commit fraud relating to the sale of Lot 11.[1] We affirm the decisions of the district court in both appeals.

## ISSUES

[¶ 2] In Docket No. S–11–0218, Ms. White presents two issues, which we rephrase as follows:

1. Did the district court err in granting summary judgment in favor of the Edeburns with respect to their claim that Ms. White breached the lease agreement?

2. Did the district court err in dismissing Ms. White's claim for breach of the implied covenant of good faith and fair dealing?

The Edeburns state the issues in a substantially similar manner as above, but present the following additional issue:

3. Is the appeal of the termination of the lease agreement moot because the Appellant no longer has an interest in the real estate?

[¶ 3] In Docket No. S–11–0219, Ms. White presents three issues, which can be set forth as a single issue:

Did the district court err in dismissing Ms. White's claims for fraud and conspiracy to commit fraud?

## FACTS

[¶ 4] Prior to the events at issue in this appeal, Ms. White sold Lot 2 and Tract 12 in the TMR subdivision to Westland Holdings, Inc., which subsequently leased the two parcels back to Ms. White. Ms. White resided in a detached camper trailer on Lot 2 and stored some belongings in a shed she had constructed on the property. The lease, which commenced on August 19, 2010 and terminated on February 19, 2012, contained the following provision:

1. For ease of reference, we will refer to Appellees Shane Edeburn Construction, LLC, Shane Edeburn, Paris Edeburn, and Paul Tozer collectively as "the Edeburns" in our discussion of Docket No. S–11–0218. Likewise, we will refer to Ms. Edeburn, Mr. Edeburn, and Mr. Tozer collectively as "the Edeburns" in discussing Docket No. S–11–0219.

5. REPAIR AND MAINTENANCE. Lessee shall, at its expense, keep and maintain the premises in a clean, [sightly], sanitary order and in good condition and repair and in compliance with all local, state and federal regulations. Lessee shall not cause or permit any waste or nuisance in or about the leased premises.

Westland Holdings subsequently sold the properties to the Edeburns on December 21, 2010. The properties were purchased subject to the lease between Westland Holdings and Ms. White.

[¶ 5] On January 31, 2011, the Edeburns notified Ms. White that she had violated Paragraph 5 of the lease by living in a camper trailer on Lot 2, in violation of county regulations, and by accumulating "trash, waste and debris," including old automobiles, on the property. The Edeburns' notice allowed Ms. White ten days to come into compliance with the lease. Ms. White did not address the alleged lease violations and continued to reside on the property after the specified termination date.

[¶ 6] The Edeburns responded by initiating legal action. They sought a declaratory judgment that the lease was terminated and requested an injunction forcing Ms. White to forfeit possession of the property. Ms. White filed an "Answer, Counterclaim & Third Party Complaint," adding Shane Edeburn to the suit as a third-party defendant. She asserted that Appellees had breached the implied covenant of good faith and fair dealing by inventing lease violations to serve as a pretext for their desire to remove her from the property.

[¶ 7] The Edeburns filed a motion to dismiss and a motion for summary judgment. The district court granted the motion to dismiss, finding that "Plaintiffs' attempt to exercise their rights under the Lease simply does not constitute a breach of good faith and fair dealing.... The covenant of good faith and fair dealing cannot be used to force parties to ignore explicit provisions in the contract, which is what Ms. White desires." The district court also granted Appellees' motion for summary judgment, finding that Ms. White had breached the lease by failing to "maintain the premises in a clean, [sightly], sanitary order" and by living in her camper in violation of local regulations. In Docket No. S–11–0218, Ms. White appeals both decisions.

[¶ 8] The issues in Docket No. S–11–0219 relate to the sale of Lot 11 in the TMR subdivision. Ms. White purchased Lot 11 in 1979 and financed the purchase with a bank loan secured by a mortgage. In 2009, Ms. White defaulted on the loan, and the bank foreclosed. The property was offered for sale at auction, and the bank purchased the property for $114,249.03. Ms. White did not redeem the property within the statutory redemption period. The bank subsequently hired Connie Webb, a real estate agent, to sell the property. According to Ms. White, she informed Ms. Webb that a third party wanted to make an offer to purchase Lot 11 when Ms. Webb was prepared to accept offers. Ms. White alleged that Ms. Webb represented to her that the property would not be marketed until it was cleaned and appraised. On February 23, 2010, with the help of Ms. Webb, the bank sold Lot 11 to the Edeburns for $22,000.00.

[¶ 9] Ms. White filed suit against Appellees, asserting claims of fraud, conspiracy to commit fraud, "loss of enjoyment and quality of life," and "punitive damages." She sought $3,000,000.00 in compensatory damages, plus additional punitive damages. The district court dismissed the complaint on Appellees' motion, finding that Ms. White had failed to allege facts sufficient to support her claims. In Docket No. S–11–0219, Ms. White appeals that decision.

## STANDARD OF REVIEW

[¶ 10] When reviewing motions to dismiss, we accept the facts stated in the complaint as true and view them in the light most favorable to the plaintiff. We will sustain a dismissal when it is certain from the face of the complaint that the plaintiff cannot assert any fact which would entitle her to relief. *Sinclair v. City of Gillette,* 2012 WY 19, ¶ 8, 270 P.3d 644, 646 (Wyo.2012). With respect to the district court's decision to grant summary judgment, we apply the following standard of review:

We review a district court's summary judgment rulings *de novo,* using the same materials and following the same standards as the district court. The facts are considered from the vantage point most favorable to the party who opposed the motion, and we give that party the benefit of all favorable inferences that may fairly be drawn from the record. *Cook v. Shoshone First Bank,* 2006 WY 13, ¶ 11, 126 P.3d 886, 889 (Wyo.2006); *Garcia v. Lawson,* 928 P.2d 1164, 1166 (Wyo.1996). Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. W.R.C.P. 56(c).

*Sutherland v. Meridian Granite Co.,* 2012 WY 53, ¶ 7, 273 P.3d 1092, 1095 (Wyo.2012).

### DISCUSSION

[¶ 11] In Docket No. S–11–0218, Ms. White contends that summary judgment was improperly granted to the Edeburns on their claim that she breached the lease agreement. She claims the Edeburns impliedly consented to her existing use of the property because the Edeburns were aware of those conditions at the time they purchased the property. Ms. White contends that residing on the property in a camper trailer without an occupancy permit did not constitute a breach of her promise to maintain "compliance with all local, state and federal regulations" because local regulations relating to occupancy permits do not apply to camper trailers. She also asserts that whether she maintained the property in a "clean, sightly, sanitary order" raises a genuine issue of material fact. Further, Ms. White claims that the Edeburns are estopped from claiming breach because they accepted the first month's payment under the lease.

[¶ 12] The Edeburns respond by asserting that Ms. White's challenge to the lease termination is moot because the lease expired on February 19, 2012. They further claim, however, that even if Ms. White's challenge is not moot, summary judgment is proper because there is no genuine issue of material fact regarding Ms. White's failure to comply with the terms of the lease. She resided on the property in a camper trailer

without an occupancy permit and allowed various junk and debris to accumulate on the property. The Edeburns contend that it is undisputed that Ms. White did not keep the property in a clean and sanitary condition. Finally, the Edeburns claim that acceptance of a single rent payment did not constitute waiver of their right to terminate the lease because the lease included a provision specifying that acceptance of rent would not operate as a waiver of default.

### Motion for Summary Judgment—Lease Violations

[¶ 13] We must first address the Edeburns' claim that this appeal does not raise a justiciable controversy because the issues presented are moot. "[A]n issue is moot when it no longer presents a live controversy with respect to which the court can give meaningful relief." *Christian Coalition of Fla., Inc. v. United States,* 662 F.3d 1182, 1189 (11th Cir.2011). We have set forth basic principles of the mootness doctrine as follows:

> Our general law on justiciability provides that courts should not consider issues which have become moot. *Gulf Oil Corp. v. Wyoming Oil and Gas Conservation Comm'n,* 693 P.2d 227, 233 (Wyo.1985). We do not decide cases when a decision will have no effect or pertains only to matters that might arise in the future. *McLain v. Anderson,* 933 P.2d 468, 472 (Wyo.1997). A case is moot when the determination of an issue is sought which, if provided, will have no practical effect on the existing controversy. *Id.* Therefore, if events occur during the pendency of an appeal that cause a case to become moot or make determination of the issues unnecessary, we will dismiss it. *Id.; see also Rocky Mountain Helicopters, Inc. v. Air Freight, Inc.,* 773 P.2d 911, 924–25 (Wyo. 1989).

*SNK v. State,* 2003 WY 141, ¶ 18, 78 P.3d 1032, 1037 (Wyo.2003) (quoting *Wyoming Bd. of Outfitters & Prof'l Guides v. Clark,* 2002 WY 24, ¶ 9, 39 P.3d 1106, 1108 (Wyo.2002)). We have further explained that a live controversy must persist throughout the duration

of the suit in order for the controversy to be justiciable:

> The doctrine of mootness encompasses those circumstances which destroy a previously justiciable controversy. This doctrine represents the time element of standing by requiring that the interests of the parties which were originally sufficient to confer standing persist throughout the duration of the suit. Thus, the central question in a mootness case is "whether decision of a once living dispute continues to be justified by a sufficient prospect that the decision will have an impact on the parties." Wright & Miller § 3533.

*SNK,* ¶ 17, 78 P.3d at 1037.

[¶ 14] The Edeburns initially raised the issue of mootness by filing a motion to dismiss this appeal in its entirety. In that motion, the Edeburns asserted that because the lease agreement expired on February 19, 2012, Ms. White no longer had an interest in the property at issue, and consequently, any determination by this Court as to the bases upon which the lease agreement was terminated "would be wholly ineffectual." We denied the motion, noting that the motion "does not account for Appellant's claim for damages relating [to] violation of the covenant of good faith and fair dealing."

[¶ 15] Although we previously refused to dismiss the appeal in light of Ms. White's claim for damages, we note that Ms. White asserts damages only in relation to her counterclaim for violation of the covenant of good faith and fair dealing, as evidenced in her response to the Edeburns' complaint:

> 27. As a result of the Counter Defendants and Shane [Edeburn] having breached the covenant of good faith and fair dealing, White has been damaged and is entitled to judgment against the Counter Defendants and Shane [Edeburn] for $500,000.00 or such greater amount as the trier of fact may award.
>
> . . .
>
> 30. White is entitled to a judgment against the Counter Defendants and Shane [Edeburn] for punitive damages in such amount as the trier of fact may award to adequately punish the Counter Defendants

and Shane [Edeburn], and will deter such wrongful conduct of this type in the future.

> WHEREFORE Counter Claimant and Third Party Plaintiff demands judgment against the Counter Defendants and Third Party Defendant as follows:
>
> 1. Count I—Breach of Covenant of Good Faith and Fair Dealing—the sum of $500,000.00 or such greater amount as the trier of fact may award.
>
> 2. Count II—Punitive damages in such amount as the trier of fact may award.

In their brief, the Edeburns largely repeat the mootness argument raised in their motion to dismiss, but confine that argument to the issue of whether the lease was properly terminated, contending Ms. White is no longer entitled to possession of the property due to expiration of the lease term. While we hold that Ms. White's claim for breach of the covenant of good faith presents a justiciable controversy in light of her assertion of damages, we agree that, because Ms. White is no longer entitled to possession of the property, the issue of whether the lease was properly terminated is moot.

[¶ 16] We note initially that other jurisdictions have held that a controversy over the right of possession under a lease is rendered moot by the expiration of the lease term. *E.g., Marshall v. Hous. Auth.,* 198 S.W.3d 782, 787 (Tex.2006) ("[Appellant's] lease expired on January 31, 2003, and she presents no basis for claiming a right to possession after that date. Thus, there was no live controversy between the parties as to the right of current possession after January 31, 2003, and the issue of possession was moot as of that date."); *Exit Co. Ltd. Partnership v. Airlines Capital Corp.,* 7 Haw. App. 363, 766 P.2d 129, 131 (1988) ("[E]ven if this court vacated the summary judgment, Airlines legally cannot regain possession of the leased premises. We accordingly hold that the issue on appeal 'has been rendered moot.' "); *Elliott v. Di Mari, Corp.,* 411 So.2d 1088 (La.App. 4 Cir.1976) ("[A]s appellant's lease has expired by its own terms and therefore it cannot now be placed in possession, any change in the trial court judgment would serve no purpose nor have any practical legal effect. The appeal must be dismissed as

moot."). In an analogous context, we have held that the issue of a student's expulsion from school becomes moot after the expulsion period has expired. *Bd. of Trs. Fremont County Sch. Dist. # 25 v. BM*, 2006 WY 23, ¶ 3, 129 P.3d 317, 319 (Wyo.2006) (citing *In re RM v. Washakie County Sch. Dist. No. 1*, 2004 WY 162, ¶ 8, 102 P.3d 868, 871 (Wyo.2004)).

[¶ 17] The Edeburns claimed below that they were entitled to relief in the form of a declaratory judgment that the lease was terminated due to Appellant's breach, and an injunction requiring Appellant to remove her property from the leased premises. The district court granted summary judgment on the requested relief, declaring that "the Lease is lawfully terminated by Plaintiffs due to Ms. White's multiple breaches." The court further ordered that "Ms. White no longer lawfully possesses the premises and must surrender possession to Plaintiffs and must remove herself and her personal property from Lot 2 and Tract 12 within 30 days after entry of this Final Judgment and Order." The sole legal effect of the district court's grant of summary judgment was to prevent Ms. White from maintaining possession of the property. Because it is undisputed that the lease expired on February 19, 2012, and that the lease did not contain any right of renewal, any change in the district court's decision with respect to the Edeburns' claim for summary judgment would have no effect on the existing controversy. Ms. White no longer has any claim to possession of the property and, accordingly, there is no possibility that our decision as to whether the lease was properly terminated will have an impact on the parties. Ms. White's challenge to the award of summary judgment is moot.

## Motion to Dismiss—Breach of Implied Covenant of Good Faith and Fair Dealing

[¶ 18] We turn next to the Edeburns' motion to dismiss Ms. White's counterclaim for breach of the implied covenant of good faith and fair dealing. In her counterclaim, Ms. White essentially alleged that the Edeburns' grounds for termination of the lease agreement were motivated by their desire to re-move her from the property. She contends that the Edeburns were aware of the conditions when they purchased the property, and, as a result, their attempt to terminate the lease on the named grounds constitutes bad faith.

[¶ 19] The Edeburns contend that termination of the lease was justified by Ms. White's lease violations, and that termination was simply an exercise of their rights under the lease. They note that they took reasonable steps to secure Ms. White's compliance with the terms of the lease, by providing notice of default and a ten-day opportunity to correct the default, despite the fact that the lease did not require such notice or opportunity to cure. The Edeburns assert that their knowledge of the conditions existing on the property at the time of purchase does not constitute acceptance of those conditions under the lease. They claim that the intent of the parties is properly determined from the unambiguous terms of the lease agreement, and that the lease did not acknowledge or permit Ms. White's unlawful or unsanitary living conditions. The Edeburns assert that we should not infer that the parties intended to allow Ms. White's non-conforming uses of the property absent an expression of that intent in the terms of the lease.

[¶ 20] We begin our analysis with the basic premise that "Every contract imposes upon each party a duty of good faith and fair dealing in its performance and enforcement." *Ultra Resources, Inc. v. Hartman*, 2010 WY 36, ¶ 84, 226 P.3d 889, 919 (Wyo.2010) (quoting Restatement (Second) of Contracts § 205 (1981)). We have stated that this implied covenant

> [R]equires that a party's actions be consistent with the agreed common purpose and justified expectations of the other party.... The purpose, intentions and expectations of the parties should be determined by considering the contract language and the course of dealings between and conduct of the parties. The covenant of good faith and fair dealing may not, however, be construed to establish new, independent rights or duties not agreed upon by the parties. In other words, the concept of good faith and

fair dealing is not a limitless one. The implied obligation must arise from the language used or it must be indispensable to effectuate the intention of the parties. In the absence of evidence of self-dealing or breach of community standards of decency, fairness and reasonableness, the exercise of contractual rights alone will not be considered a breach of the covenant.

*Whitlock Constr., Inc. v. South Big Horn County Water Supply Joint Powers Bd.,* 2002 WY 36, ¶ 24, 41 P.3d 1261, 1267 (Wyo. 2002) (citation omitted). Although many claims for breach of good faith involve questions of fact making summary judgment inappropriate, summary judgment may be appropriate where, under the facts in the record, the party's actions were in conformity with the clear language of the contract. *Id.*

*M & M Auto Outlet v. Hill Inv. Corp.,* 2010 WY 56, ¶ 26, 230 P.3d 1099, 1108–09 (Wyo. 2010).

[¶ 21] The district court found no merit in Ms. White's argument that the Edeburns accepted Ms. White's use of the property based on their knowledge of the condition of the property at the time of purchase. The court found that the lease, which was attached to Appellees' complaint, was unambiguous, and that Ms. White was bound by its terms:

> Ms. White has not asserted that the Lease is ambiguous. Indeed, she has indicated she understood all provisions of the Lease but believes that several provisions "do not exactly apply in this instance." Further, the Court finds that the contract is clear and unambiguous and its plain language is applicable.

The court determined that "The covenant of good faith and fair dealing cannot be used to force parties to ignore explicit provisions in the contract, which is what Ms. White desires," and concluded that Ms. White had not alleged facts sufficient to raise a claim for breach of the covenant.

[¶ 22] We agree with the district court's analysis. The fact that the Edeburns had notice of the conditions existing on the property does not operate to incorporate those conditions into the terms of the lease, and Ms. White does not present cogent argument or pertinent legal authority indicating otherwise. The language of the lease is unambiguous, and, accordingly, we do not venture outside its terms to determine the parties' intent. *Sutherland,* ¶ 8, 273 P.3d at 1095. The Edeburns' attempt to terminate the lease simply constitutes an exercise of contractual rights, insufficient to raise a claim of breach of the covenant of good faith and fair dealing.[2]

[¶ 23] Further, the Edeburns provided Ms. White with notice of the lease violations and allowed her ten days to come into compliance with the lease, despite the fact that no notice of termination or opportunity to cure was required under the lease. The Edeburns' actions were in conformity with the clear language of the lease, and even exceeded their contractual obligations to Ms. White. The facts of this case, when viewed in the light most favorable to Ms. White, do not give rise to a claim for breach of the implied covenant of good faith and fair dealing. Accordingly, we affirm the decision of the district court dismissing Ms. White's counterclaim.

### Motion to Dismiss—Fraud and Conspiracy to Commit Fraud

[¶ 24] In Docket No. S–11–0219, Ms. White challenges the district court's dismiss-

---

2. Without reaching the question of whether Ms. White violated the lease by living in a camper trailer and by accumulating various items of scrap and personal property around her trailer, we note that photos of the property included in an affidavit from Shane Edeburn reveal accumulation of various items of property on the leased land, including: tires, plastic bins, bottles, ladders, hoses, garden implements, fence posts, wood scraps, automobiles, wire fencing, and various piles of trash and debris. Ms. White does not dispute that the photographs accurately de-

picted the condition of the leased property. Further, at the hearing on the Edeburns' motion to dismiss Ms. White's counterclaim, Ms. White did not contest the fact that she was living on the property in violation of county regulations. Rather, Ms. White asserted, as she does on appeal, that the Edeburns accepted the condition of the land, and the fact of her habitation in a camper trailer, due to their knowledge that these conditions existed at the time the property was purchased.

al of her claims of fraud and conspiracy to commit fraud relating to the sale of Lot 11. She contends that she has stated sufficient claims of relief to preclude dismissal. Ms. White contends that a realtor owes a duty of honesty to a prospective purchaser, and that Ms. Webb breached this duty by concealing facts while making arrangements to facilitate a sale of the property to the Edeburns. Ms. White further asserts that the Edeburns gave inadequate consideration for the property, and that this fact alone is sufficient to raise a presumption of fraud. With respect to her claim of conspiracy to commit fraud, Ms. White simply asserts that "If the underlying tort has been pleaded sufficiently, conspiracy to commit fraud is a valid count." She repeats the arguments relating to her fraud claim, asserting that the amount paid for the property is sufficient to raise a claim of conspiracy to commit fraud.

[¶ 25] Ms. Webb and the Edeburns claim that, after Ms. White lost the property to foreclosure, she had no interest in the property that would entitle her to be informed of the Edeburns' intent to purchase the property, or that would give her the right to make an offer on the property. They claim that the bank had the right to dispose of the property, and to select a prospective purchaser, without any obligation to Ms. White. Further, Ms. Webb contends that Ms. White has failed to state a claim for fraud or conspiracy to commit fraud because Ms. White has not suffered any damage as a result of the alleged fraud or conspiracy.

[¶ 26] We have previously set forth the elements of fraud, and have explained that the facts supporting those elements must be alleged "clearly and distinctly":

"The elements of a claim for relief for fraud are a false representation made by the defendant which is relied upon by the plaintiff to his damage, the asserted false representation must be made to induce action, and the plaintiff must reasonably believe the representation to be true. A plaintiff who alleges fraud must do so clearly and distinctly, and fraud will not be imputed to any party when the facts and circumstances out of which it is alleged to arise are consistent with honesty and purity of intention. Fraud must be established by clear, unequivocal and convincing evidence, and will never be presumed."

*Osborn v. Emporium Videos,* 870 P.2d 382, 383 (Wyo.1994) (quoting *Lavoie v. Safecare Health Service, Inc.,* 840 P.2d 239, 252 (Wyo. 1992)); *see also Sundown, Inc. v. Pearson Real Estate Co.,* 8 P.3d 324, 330 (Wyo.2000); W.R.C.P. 9(b) (requiring that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity").

[¶ 27] We find that Ms. White has failed to set forth facts sufficient to state a cause of action for fraud against Ms. Webb or the Edeburns. First, with respect to the claim against Ms. Webb, Ms. White asserts that she was falsely informed that Lot 11 would not be marketed until it was cleaned and appraised, and that this false representation deprived her of an opportunity to submit an offer on the property. However, assuming that Ms. Webb made this statement, Ms. White has failed to establish that she relied on the statement to her detriment. Ms. White did not allege that she had any right to purchase Lot 11 from the bank. Indeed, neither the bank nor Ms. Webb, as its agent, had any obligation to ensure that Ms. White received an opportunity to submit an offer to purchase Lot 11. Ms. White had no interest in the property after the statutory redemption period expired, and, accordingly, she was not deprived of any interest in the property and was not damaged by its sale to the Edeburns. Ms. White has failed to assert a cause of action for fraud against Ms. Webb.

[¶ 28] Ms. White's claim against the Edeburns must be dismissed for the same reasons. Additionally, however, Ms. White has failed to allege that the Edeburns made any false representations to her regarding the sale of Lot 11. In fact, Ms. White's complaint fails to assert that the Edeburns made any representation to her before they purchased the property. Further, Ms. White does not assert that the Edeburns had any obligation to inform her of their intention to purchase the property or of any details of their purchase offer. Consequently, Ms. White's allegations against the

Edeburns have failed to satisfy any of the elements of a claim for fraud.

[¶ 29] We also conclude that Ms. White has failed to state a claim for conspiracy to commit fraud. In the proceedings below, Ms. White did not identify the elements of a claim for conspiracy to commit fraud. In her complaint, she alleged that Appellees "by mutual agreement, secrecy, and trickery, conspired to sell Lot 11 to Shane [Edeburn] at a price well below its current value, with the purpose of preventing the Plaintiff from residing on Lot 11." The district court found that Ms. White's claim was analogous to a claim of "civil conspiracy," which, as recognized by the Tenth Circuit, consists of the following elements: "(1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds in the object or course of action; (4) one or more unlawful overt acts; and (5) damages as the proximate cause thereof." *McKibben v. Chubb*, 840 F.2d 1525, 1533 (10th Cir.1988). The district court found that Ms. White's complaint could be read to satisfy the first three elements, but that the complaint did not satisfy the final two elements, namely, an unlawful act or damages resulting from an unlawful act.

[¶ 30] We agree with the district court's analysis. As we have previously noted, a plaintiff cannot claim civil conspiracy or punitive damages without an underlying cause of action in tort. *Cent. Wyoming Med. Lab., LLC v. Med. Testing Lab, Inc.*, 2002 WY 47, ¶ 13, 43 P.3d 121, 126 (Wyo.2002). In this instance, Ms. White's conspiracy claim fails for the same reasons that are fatal to her claim of fraud. Fundamentally, in order to show that she was entitled to relief, Ms. White was obliged to allege that she suffered damages resulting from Appellees' conduct. In an effort to show that she was in fact harmed, Ms. White asserted in her complaint that she "was prevented from re-acquiring her residence on Lot 11 and has been forced to live elsewhere." As in her claim of fraud, however, Ms. White failed to allege that she was within the statutory redemption period at the time Lot 11 was sold to the Edeburns, or that she otherwise had any interest in the property that would entitle her to an oppor-

tunity to "re-acquire" the property. Ms. White had no greater interest in Lot 11 than any other member of the public after the redemption period expired, and the sale of Lot 11 to a party other than herself is not a legally recognizable harm. Construing the allegations in Ms. White's complaint in the light most favorable to her, she has failed to state a cause of action for conspiracy to commit fraud.

[¶ 31] Finally, Ms. White's claims for loss of enjoyment of life and punitive damages must also fail. As the district court recognized, neither of these claims for damages exist as independent causes of action. *Cook*, ¶ 46, 126 P.3d at 897 ("A claim for punitive damages is an element of a cause of action; it does not constitute a separate claim or cause of action."); *Mariner v. Marsden*, 610 P.2d 6, 11 (Wyo.1980) (explaining that loss of enjoyment of life is a component of general damages). Accordingly, Ms. White's claims for loss of enjoyment of life and punitive damages must also be dismissed for failure to state a claim upon which relief may be granted.

[¶ 32] Affirmed.